## No. 19,925.

NEIL MCFADZEAN, ET AL., *v.* HULDA J. LOHR, ETC., ET AL.

(380 P. [2d] 20)

Decided March 25, 1963.

Mr. JESSE E. POUND, Mrs. ELIZABETH A. CONOUR, for plaintiffs in error.

Mr. WILLIAM R. BARTLETT, Messrs. MOSES & DE-SOUCHET, for defendants in error.

*En Banc.*

MR. JUSTICE SUTTON delivered the opinion of the Court.

THE judgment here for review is concerned with an order of the district court of Rio Grande County quieting title to certain water rights and regulating the administration and management of water rights in the Minor Ditch, an unincorporated mutual ditch. The parties appear here in the reverse order of their appearance in the trial court, where plaintiffs in error were defendants and defendants in error were plaintiffs. They will be referred to as they appeared in the trial court.

The complaint was originally filed in 1950. It stated that the plaintiffs were down-ditch owners of certain water rights in the Minor Ditch and that the defendants were up-ditch owners of other water rights in the Minor Ditch. The complaint then asked that the defendants be enjoined from practices which were preventing the plaintiffs from receiving their share of the water and asked that the rights of both plaintiffs and defendants

in their respective water rights be quieted. Following the filing of this complaint the parties themselves got together and elected a commission of three to administer the ditch and to see if they could arrive at a solution. During the next six years the Ditch operated under this arrangement. However, it became increasingly clear to the plaintiffs that this arrangement was not working and in 1956 they had their original complaint reinstated.

The complaint was subsequently amended to include a request that the trial court appoint a competent, disinterested engineer to study the problems of the Ditch, including seepage, evaporation and measuring devices with all of the parties to share the expenses of such a study; the usual final prayer was "for such other and further relief as to the court may seem proper."

During the course of the proceedings a stipulation was entered into which provided for the management of the Ditch during the pendency of the action, the appointment of an engineer and the percentage each party would pay of the total expenses involved; that is, the plaintiffs 37½% (Lohrs 25% and Fuchs and other interests 12½%), and the defendants 62½% (McFadzean 25%, Rabers 25% and Davie interests 12½%). These percentages were later confirmed in the court's interlocutory decree of May 19, 1959.

All the defendants filed an "AMENDED ANSWER AND COUNTERCLAIM" and Defendant Raber alone filed a "SEPARATE COUNTER-CLAIM" in which he asserted his ownership of the two cubic feet of water per second of time decreed to the Minor Ditch under priority No. 190, which the Lohrs claimed as theirs. A stipulation appears in the record whereby all parties stipulated that the two Lohrs each owned one-half cubic foot of the water per second of time in dispute, and Raber thereafter by a separate Amended Counter-Claim continued to assert his claim to the remaining one

cubic foot, which is known as the "Knowlton and Lohr" interest. This issue was tried separately and is the subject of a separate writ of error in this court (Raber v. Lohr, 152 Colo. 1, 380 P. (2d) 24). Frank Lohr, one of the original plaintiffs, died before trial and his widow as executrix and his son were thereafter substituted as parties in both actions.

Prior to trial of the case the court appointed the local water commissioner, Phillip E. McOllough, to examine the matter and make a report. Later McOllough sought and obtained the court's permission to hire an engineering firm to make more detailed studies. After what appears to have been an exhaustive study of the situation of the Minor Ditch, McOllough submitted his written report, which is in the record before us. It reviewed the status of the Ditch and its needs and suggested two possible plans for its reorganization, referred to as Improvement Plan No. 1 and Plan No. 2.

The case was finally tried to the court in 1959 with testimony taken from all parties concerned. McOllough presented his report and recommended his Plan No. 1 for adoption. Plaintiffs' testimony favored No. 1 and defendants took no official position on either plan. At this point in the proceedings defendants objected to the court's appointment of the engineering firm, since the cost thereof evidently would be apportioned among the parties according to their interests.

At the conclusion of the hearing the court took the case under advisement and on April 25, 1961, announced its findings of fact, conclusions of law and final judgment, which quieted title to the water rights of the individual plaintiffs and defendants. The trial court, however, erroneously stated in connection with the one cubic foot of water per second of time still claimed by Raber in his separate Amended Counter-Claim that that " * * * dispute was later settled by the dismissal of a writ of error sued out of the Supreme Court, which

settled the issue * * * ." It then proceeded to determine that each of the two Lohrs owned one cubic foot of water per second of time of the water in dispute. In this it was in error for it obviously misinterpreted the previous dismissal of the writ of error by this court relating to this matter as a final adjudication on the merits when in fact it was dismissed only on a procedural point without prejudice. It is that dispute which is the subject matter of a writ of error in Raber v. Lohr heretofore referred to.

In addition to the above matters disposed of by the judgment of April 25, 1961, the court also adopted most of recommended Improvement Plan No. 2, assessing plaintiffs 37½% and defendants 62½% of the cost of the report. It is to these last two provisions of the decree that this writ of error is directed.

Defendants' first assignment of error is the court's adoption of the pertinent parts of Improvement Plan No. 2. They contend that the evidence introduced at the trial was insufficient to warrant such finding and judgment; further, that the evidence indicates this plan will not meet the needs of all the Minor Ditch owners. In addition, defendants assert that this action violated their rights under the Colorado Constitution, Article II, Section 25, and under the United States Constitution, the Fourteenth Amendment, paragraph 1, in that they assert they were deprived of an opportunity to be heard on the No. 2 Plan and thus were denied due process of law.

■ We find defendants' arguments to be without merit. An examination of the record discloses that the court appointed engineer testified at length as to his proposed plans for the Minor Ditch, and substantial documentation was offered in evidence to demonstrate how both plans would operate. The fact that the trial court heard no direct non-expert testimony on the effectiveness of Improvement Plan No. 2 is immaterial.

Both plans were similar in many respects and in the situation before the court something had to be done to correct the existing condition. The court had before it expert opinion evidence upon which it based its conclusions, and non-expert evidence was not necessary to a solution even though some of that received related at least to Plan No. 1. The applicable rule here is that once a court of equity has jurisdiction over both the persons and the subject matter of the controversy, it may take whatever steps are necessary to enter an effective decree. See *Taylor v. Hulett, et al.,* 15 Idaho 265, 97 Pac. 37 (1908). Since there is evidence in support of the court's findings we will not substitute our judgment for that of the trier of the facts. *Ireland v. Henrylyn Irrigation District,* 113 Colo. 555, 160 P. (2d) 364 (1945).

 Nor are we impressed by defendants' contention that they were deprived of property without due process of law. They were in court and had the opportunity to present whatever competent evidence they desired. Because they did not choose to offer evidence to counter every issue or fact presented cannot be the basis of a reversal once the matter is decided adversely to them. It has been held that the requirements of procedural due process have been met when the individual concerned is under the court's jurisdiction and has been given an opportunity to be heard, regardless of whether he takes advantage of it. *Missouri ex rel Hurwitz v. North, et al.,* 271 U. S. 40, 46 S. Ct. 384 (1926). Though the court admitted both of McOllough's Improvement Plans in evidence defendants contented themselves with offering evidence only against Improvement Plan No. 1. They failed or neglected to offer anything as to Improvement Plan No. 2. The fact that they did not do so is not a denial of due process.

 Nor was due process lacking when the trial court appointed the engineering firm to assist McOllough in

his study of the Ditch. Plaintiffs sought general as well as specific relief. The parties had stipulated that a study was to be made, and though defendants did limit their approval to certain features, from that point on the case was under the control of the court and it might properly take whatever steps it determined to be reasonably necessary to make the project effective. Although the stipulation did not specifically include the appointment of the engineering firm, if the court deemed such service to be necessary it had the power to make the appointment. The purpose of a court of equity is to promote and achieve justice with some degree of flexibility. See 19 *Am. Jur. Equity*, §410.

Finally, defendants object to paying any part of the engineering costs. They in effect say that by paying they will have to pay for the plaintiffs to prove their case since plaintiffs requested the original appointment of an engineer.

As recited above, the defendants were held liable for 62½% of the costs and the plaintiffs for 37½%. The stipulation provided for the obtaining of a "competent, and disinterested engineer" to make a report on the condition of the Ditch and to determine how much each party was to be assessed for his report. The trial court followed the same percentages in its final judgment as it did in its interlocutory order. The fact that defendants deem the report unfavorable does not give them the right to complain of their proper share of the cost in the absence of pleading and proof of fraud or wrongdoing.

The record reveals that the engineering report was not necessarily the sole basis for the plaintiffs' case, the evidence disclosing that the Minor Ditch has had a regrettably large quantum of difficulty in its administration for a number of years. It is apparent that these difficulties were also considered by the trial court and under the power vested in it has taken the steps deemed

necessary under its equitable powers, based on the evidence before it, to correct the inequitable situation.

Case No. 19,928 is being decided concurrently with the instant one and the issue of title to the one cubic foot of water per second of time involved therein is being returned for further proceedings.

From what we have heretofore said it is apparent that the judgment in the instant case must be affirmed in all respects except as to two matters and as to them the judgment is reversed and remanded as follows:

1. That portion of the judgment quieting the title in each Hulda J. Lohr and Edward G. Lohr to one cubic foot of water per second of time of Minor Ditch Priority No. 190, River No. 53, is reversed with directions to correct said judgment to read one-half cubic foot per second of time from said priority to each of said persons; and

2. As to the final assessment of engineering costs as between Leon F. Raber and the two Lohrs, the judgment is ordered vacated with the trial court to retain jurisdiction in order to make adjustments, if necessary, in the event the title of the Lohrs to said disputed water is not confirmed on ultimate disposition of that issue. Final assessment on said costs is to be made thereafter.

MR. JUSTICE MOORE not participating.