Mr. Justice McWilliams
delivered the opinion of the Court.
This writ of error presents a controversy as to the “ownership” or “right to divert and use” one cubic foot of water per second of time decreed to the Minor Ditch under Priority No. 190, this particular right being hereinafter referred to as the “Knowlton and Lohr interest.”
Leon F. Raber asserted his claim to ownership of the Knowlton and Lohr interest in a “separate” amended counterclaim filed by him in an injunctive action originally brought by Frank Lohr and George Fuchs against Neil McFadzean, Ross Davis and Leon F. Raber. During the pendency of the proceeding Frank Lohr died, and Huida J. Lohr, his widow and executrix of his last will, was substituted as a “party plaintiff.” Prior to Frank Lohr’s death, his son, Edward G. Lohr, was added as a party plaintiff when it became evident that subsequent to the institution of the action Frank Lohr conveyed “one-half cubic foot of water per second of time decreed to the Minor Ditch by appropriation Priority No. 190” to his son.
It was in this injunctive proceeding that Raber filed his “separate” counterclaim against “Huida J. Lohr, in *3 dividually and as executrix of the estate of Frank Lohr, deceased, and Edward G. Lohr.” To Raber’s counterclaim the Lohrs filed a reply, and it was agreed by all that the issues raised by the “separate” counterclaim and reply would be tried separate and apart from all “other issues” as posed by the amended complaint and amended answer and a counterclaim jointly urged by McFadzean, Davis and Raber. These “other issues” were subsequently tried and the judgment entered therein has been affirmed in part and reversed in part by this court concurrent herewith in a separate writ of error entitled McFadzean, et al., v. Lohr, et al., 152 Colo. 31, 380 P. (2d) 20. As noted above, however, this writ of error relates solely to the dispute between Raber and the Lohrs as to the “ownership” of the Knowlton and Lohr interest.
In the “separate” amended counterclaim Raber generally alleged that he was the “sole and only owner” of the Knowlton and Lohr interest “in and to said Minor Ditch or the water and water rights decreed thereto,” that the Lohrs “have no right, title or interest thereto,” and he sought a decree to that effect.
More specifically, in support of his claim Raber alleged the following:
1. During his lifetime Fred Raber (Leon’s father) was the “owner of 6 cubic feet of water per second of time appropriated and decreed to said Minor Ditch under appropriation Priority No. 190”;
2. That Fred Raber died on December 2, 1906, leaving a last will and testament which was duly admitted to probate in the county court of Rio Grande County and that said will so devised and bequeathed his property that his wife (Mary) received a life estate in all his properties, with the remainder over to his children, share and share alike;
3. That Mary Raber on August 12, 1910, by warranty deed purported to convey to Adamson two cubic feet of *4 water per second of time theretofore decreed to the Minor ditch under appropriation Priority No. 190;
4. That Adamson on November 22, 1913, conveyed by waranty deed to Moore one cubic foot of water per second from Priority No. 190 to the Minor Ditch and that Moore similarly conveyed this same interest to Underwood on July 30, 1914.
5. That this so-called “Underwood interest” by various subsequent conveyances thereafter “came to rest” in the Lohrs;
6. That Adamson on November 22, 1913, conveyed by warranty deed to Kenney one cubic foot of water per second of time from said Priority No. 190 to the Minor Ditch;
7. That on December 12, 1913, Kenney conveyed this same interest by warranty deed to Knowlton and Lohr;
8. That this so-called “Knowlton and Lohr” interest by various subsequent conveyances has also “come to rest in the Lohrs”;
9. That on or about August 4, 1914, Leon Raber and his sisters, Helen, who at the time was still a minor, and Carrie, executed and delivered to Underwood a quit-claim deed “whereby they quit-claimed to Elmer Underwood all their right, title and interest in and to one cubic foot of water per second of time from Priority No. 190 to the Minor Ditch”;
10. That this quit-claim deed to Underwood was executed and delivered by them without consideration, that each of the grantors were small children at the time of Fred Raber’s death and none knew that Mary Raber held only a life estate in and to the aforementioned ditch and water rights and therefore had no right to attempt to convey “the remainder of said children”;
11. That this same quit-claim deed was executed and delivered to Underwood for his “sole use and benefit, and not for the use and benefit of any other person”;
12. That on February 7, 1952, Mary Raber, the life *5 tenant, died and that Fred Raber’s property by the terms of his will then vested in Leon Raber and his sister, Helen, and the heirs of his deceased sister, Carrie; and
13. That Leon Raber has since acquired all the right, title and interest of his sister, Helen, and the heirs of his deceased sister, Carrie.
By reply the Lohrs admitted:
1. That Fred Raber during his lifetime owned 6 cubic feet of water per second of time appropriated by and decreed to said Minor Ditch under Appropriation Priority No. 190:
2. That Fred Raber died on December 2, 1906, and that his last will was duly admitted to probate;
3. The execution and delivery of all of the various warranty deeds referred to by Raber in his counterclaim; and
4. That on or about August 4, 1914, Leon Raber and his two sisters, Helen and Carrie, “made, executed and delivered to Elmer Underwood a certain quit-claim deed.”
The Lohrs denied all other allegations in the counterclaim, and as affirmative defenses pled estoppel, laches, possession of the Knowlton and Lohr interest under color of title and payment of taxes thereon for more than seven years (citing C.R.S. ’53, 118-7-8), and adverse possession for more than forty years.
Some time after the Lohrs had filed their reply to Raber’s amended counterclaim, the Lohrs also filed a written “Motion to Dismiss Amended Separate Counterclaim of Defendant Leon F. Raber,” alleging that the counterclaim should be dismissed “for reason that the same, together with the exhibits on file herein, do not state a claim upon which relief may be granted.” (Emphasis supplied.) The trial court granted this motion and entered a judgment of dismissal of the Raber separate amended counterclaim, and by this writ of error Raber seeks a reversal thereof.
*6 At the very outset Raber contends that from a purely procedural standpoint the action of the trial court was precipitous and erroneous and that the judgment of dismissal must therefore be reversed and the cause remanded to the end that Raber be given the opportunity to put on such evidence as he may have in support of his claim. With this contention we are in complete agreement.
It should be noted that the Lohrs did not attack the sufficiency of the amended counterclaim, per se. Rather, in their motion to dismiss they stated that the amended counterclaim, “together with the exhibits on file herein,” does not state a claim upon which any relief may be granted. The motion itself does not identify the exhibits thus relied upon nor were any supporting documents of any kind attached to the motion. If the words “exhibits on file herein” were intended to include exhibits offered and received in the trial of the “other issues” raised by the complaint and answer, which trial was held prior to the time Lohrs filed their motion to dismiss Raber’s counterclaim, then under these circumstances the hold ing was erroneous. In this regard, at the very outset of the trial of these “other issues” it was specifically agreed by all that said trial was to be “without prejudice” to the subsequent determination of the issues raised by the counterclaim and reply.
Although the record before us is not too clear on this point, it is believed more probable that the phrase “exhibits on file herein” is intended to include one, or more, or all of some twenty-seven exhibits received in evidence at the “first” trial of the Raber counterclaim. The present writ of error seeks reversal of the order of dismissal of Raber’s amended counterclaim. Raber’s original counterclaim was dismissed under the following circumstances:
1. When Raber’s original counterclaim, wherein he asserted his ownership of two cubic feet of water per sec *7 ond of time decreed to the Minor Ditch under Priority No. 190, and Lohrs’ reply thereto come on for trial, Raber before calling his first witness offered 18 exhibits and Lohr at the same time offered an additional 9 exhibits, all of which were received without objection as to authenticity, but with the reservation that all were “subject to explanation”;
2. Thereafter at the conclusion of the opening statement of counsel for Raber, counsel for the Lohrs in order to “expedite matters” moved to dismiss the counterclaim on the basis of “the exhibits which have been admitted and the opening statement of counsel”;
3. This motion was granted and the original Raber counterclaim dismissed, with Raber being given ten days within which to file an amended counterclaim or “to elect to stand upon the counterclaim on file”;
4. Within ten days after this dismissal Raber filed the amended counterclaim with which we are now concerned.
In dismissing Raber’s amended counterclaim it is apparent from the trial court’s comment that it relied upon the quit-claim deed from Leon Raber, and his sisters, Helen and Carrie, to Underwood, executed and delivered on August 14, 1914, and to which reference has heretofore been made. This deed was offered by the Lohrs as their exhibit No. 9 in the earlier trial of Raber’s original counterclaim and the reply thereto.
The posture of this matter being what it is, it was improper for the trial court to dismiss Raber’s amended counterclaim. Raber’s original counterclaim was dismissed and no review was sought from that order of dismissal. Exhibits received in that hearing are not ipso facto “in evidence” in connection with the subsequent hearing of Raber’s amended counterclaim and the reply thereto. There being no stipulation that these exhibits could be considered in disposing of the issues framed by the amended counterclaim and reply, and none of the *8 exhibits ever having been reoffered and received, it was error for the trial court to consider them at this stage of the proceedings. Additionally, in dismissing Raber’s amended counterclaim, as well as in dismissing the original counterclaim in the earlier trial, the trial court is in the awkward and untenable position of dismissing Raber’s claim on the basis of one of Lohrs’ exhibits, without Raber even being given opportunity to put “on his case.” In short, because of this procedural error this judgment must be reversed.
The posture of this proceeding therefore precludes a consideration at this time of the legal effect of the Underwood quit-claim deed, i.e. Lohrs’ exhibit No. 9. In this regard the Lohrs argue that this deed in and of itself defeats Raber’s counterclaim, whereas Raber contends that the deed by its own terms does not affect his claim to the Knowlton and Lohr interest, and in any event the deed under the particular circumstances of its execution and delivery is without legal effect. Answers to these and related questions must await such time as Lohrs’ exhibit No. 9 is properly before the Court.
The judgment is reversed and the cause remanded for further proceeding and ultimate disposition of the issues framed by Raber’s separate, amended counterclaim and Lohrs’ reply thereto in a manner consonant with the views expressed herein and the Rules of Civil Procedure.
Mr. Justice Moore not participating.