Gene GRAY, Plaintiff-Appellee and
Cross-Appellant,

v.

Tad PAXTON, Defendant-Appellant
and Cross-Appellee.

No. 80CA1215.

Colorado Court of Appeals,
Div. II.

Jan. 20, 1983.

Rehearing Denied Feb. 24, 1983.

Certiorari Denied May 9, 1983.

Cashen, Cheney, Johnston, Adamson & Campbell, Leonard W.D. Campbell, Montrose, for plaintiff-appellee and cross-appellant.

Woodrow, Roushar & Weaver, Frank J. Woodrow, Montrose, for defendant-appellant and cross-appellee.

BERMAN, Judge.

The seller, Tad Paxton, appeals a judgment granting damages of $21,083.75 for partial breach of a contract to buy and sell land. Gene Gray, the buyer, cross-appeals claiming that the damages awarded did not fully compensate him for his loss. We affirm.

Gray entered into an oral contract with Paxton in 1962 to purchase a portion of Paxton's range land known as the "buck pasture" for a consideration of $2,000. In 1966, Gray and Paxton agreed that a survey of the property was necessary in order that a deed could be prepared and recorded to commemorate the sale. Neither party examined the survey for its accuracy before it was incorporated in the deed. Three years later, Paxton granted to one Miller an option to purchase land directly south of that which was recorded in the Paxton-to-Gray deed. An assignee of Miller—Amato—exercised the option in 1972 for $116 per acre.

Gray visited a real estate agent's office in 1973 to look into the possibility of purchasing more land adjacent to the buck pasture. He discovered that the southern portion of the buck pasture ("south pasture"), which he assumed he had purchased from Paxton, had been sold to Amato, who had subsequently sold it to Selvidge. Because he needed the land for his cattle operation, Gray purchased the land held by Selvidge for $238.50 per acre, or $32,896.30.

Gray then brought suit claiming he was entitled to damages because Paxton had wrongfully sold a portion of the buck pasture conveyed to him by the 1962 contract. The court found that the original intent of the parties reflected by their oral contract was to convey the south pasture to Gray in 1962. Thus, the trial court concluded that, because Paxton wrongfully optioned and sold the south pasture to a third party, Gray was entitled to damages based on the value of the property as of the date of the Miller option in the amount of $21,083.75. This figure was based on expert testimony establishing that the south pasture was worth between $150 and $160 per acre on that date.

Paxton argues on appeal that rescission was the proper remedy. Alternatively, he argues that if damages are awarded, they should be based on the land's value in 1962, the year of their oral contract, or as of 1966, the year the deed was recorded. He also claims that the trial court's findings on the acreage contemplated by the parties' contract was in error. Gray cross-appeals claiming he is entitled to damages which would reimburse him for the money spent in repurchasing the south pasture from Selvidge, in the amount of $32,896.30, less a credit for a small over-conveyance.

I.

██ Paxton first argues that since the parties were mutually mistaken as to the acreage conveyed by the deed, rescission was the only available remedy. We disagree.

Relying upon *Dlug v. Wooldridge*, 189 Colo. 164, 538 P.2d 883 (1975), Paxton argues that because the purchase price was stated "in gross," rescission is the only available remedy. However, this characterization of *Dlug* is not completely accurate. The *Dlug* court found that either rescission or abatement were proper remedies, and remanded with directions to give the buyers the choice between those two remedies. Further, the court in *Dlug* stated: "In equity cases . . . the court must fashion a remedy that does justice under the particular circumstances with which it is confronted."

Here, a choice between rescission and abatement would not "do justice under the particular circumstances." The contract has been in effect for twenty years, and land values have changed so dramatically that neither rescission nor abatement would afford Gray even a fraction of what he bargained for in 1962.

Moreover, where there is a breach of the covenants of an executed contract, rescission is usually not available, and the purchaser is limited to a suit for damages. *D. Dobbs, Remedies* § 12.12 (1973). Thus, the trial court did not err in awarding damages rather than rescission.

## II.

Both Paxton and Gray dispute the amount of damages awarded by the trial court. We find no error.

■ As noted above, in *Dlug, supra,* the court held that in equity cases the court must fashion a remedy that does justice under the particular circumstances. As this is a case of *mutual* mistake, the vendor should not be burdened with the entire loss of appreciated value. Nor should a vendor be allowed to sell the same parcel twice and retain the benefits of both sales. We conclude that, upon weighing the equities, the trial court properly balanced these two interests to arrive at a just result. Hence, we do not reverse its treatment of the matter. *See McFadzean v. Lohr,* 152 Colo. 31, 380 P.2d 20 (1963).

■ Further, we reject Paxton's argument that damages should have been fixed at the time of the original oral contract or the deed recordation. For guidance in fashioning an equitable result here, the rationale of constructive trusts is enlightening. In *W. de Funiak, Handbook of Modern Equity* § 9 at 214 (2d ed. 1956) the author suggests that:

"[W]here the contract vendor conveys the property to a third person in violation of the contract, the contract purchaser may not recover the property from such third person if the latter qualifies as a bona fide purchaser, although the contract purchaser may impose a constructive trust upon the proceeds of that sale in the hands of the vendor."

■ Here, a constructive trust was created by operation of law at the moment of the conveyance to a third party, thereby fixing the time of Paxton's grant of an option on the property as the point when damages are properly measured. "Constructive trusts are such as are raised by equity in respect of property which has been acquired by fraud, or where, though acquired originally without fraud, it is against equity that it should be retained by him who holds it." *Botkin v. Pyle,* 91 Colo. 221, 14 P.2d 187 (1932). *See also Page v. Clark,* 197 Colo. 306, 592 P.2d 792 (1979). While the imposition of a trust to prevent unjust enrichment may not always be appropriate, the fairness of the result here achieved by such a measure of damages is compelling.

■ We also reject Gray's argument that he is entitled to the full amount required to repurchase the property. After a contract has been executed, there are numerous justifications for a more limited rule of damages. Among these is the fact that, in the case of a completed conveyance, a purchaser is deemed to have relied more upon his own investigation of title, rather than upon vendor's assertions. And, as is stated in *D. Dobbs, Handbook of the Law of Remedies*

§ 12.8 (1973), "a title defect may not be demonstrated for years, at a time when the entire character of the neighborhood might have changed and when values have increased many-fold. Thus in the case of a conveyance a narrow rule of damages might be warranted when it [would not be] in the case of an executory contract."

Not only did the trial court properly assign the option date as the valuation date, it properly valued the land as of that date. Paxton conveyed approximately 4,000 acres to Selvidge, 137 of which was the south pasture. Although the value of individual acres does vary, the total option price divided by the number of acres would be equivalent to an average price per acre of $100. However, an expert witness testified that the south pasture was more valuable than the average acre within the 4,000 acre parcel and assigned a value of $150 to $160 per acre to the specific acres in question. Thus, the $155 per acre figure arrived at by the trial court was supported by the evidence, and we will not disturb that finding on review. *Broncucia v. McGee,* 173 Colo. 22, 475 P.2d 336 (1970).

Judgment affirmed.

SMITH and TURSI, JJ., concur.