The COLORADO SPRINGS BOARD OF REALTORS, INC., Petitioner and Cross–Respondent,

v.

The STATE of Colorado, Respondent and Cross–Petitioner.

No. 87SC286.

Supreme Court of Colorado, En Banc.

Oct. 2, 1989.

Gorsuch, Kirgis, Campbell, Walker and Grover, John L. Ferguson, Denver, and

Darrell D. Thomas, Colorado Springs, for petitioner and cross-respondent.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Gregory Smith, Deputy Atty. Gen., Thomas P. McMahon, First Asst. Atty. Gen., and James R. Lewis, Asst. Atty. Gen., Denver, for respondent and cross-petitioner.

Robert D. Butters, Chicago, Ill., for amicus curiae Nat. Ass'n of Realtors.

Justice KIRSHBAUM delivered the Opinion of the Court.

The Colorado Springs Board of Realtors (the Board) appeals the trial court's judgment, entered upon remand subsequent to our decision in *People v. Colorado Springs Board of Realtors, Inc.*, 692 P.2d 1055 (Colo.1984) (*CSBR I*), enjoining the Board from enforcing certain of its membership policies. The State cross-appeals. We affirm in part and reverse in part.[1]

In *CSBR I* we reversed the trial court's initial judgment, concluding that certain of the Board's membership practices constituted an unreasonable restraint of trade in violation of section 6–4–101, 2 C.R.S. (1984 Supp.).[2] We then remanded the case to the trial court for the entry of more specific findings and for application of the appropriate legal analysis. The factual circumstances giving rise to this case and its procedural history were described in detail in *CSBR I* and will not be repeated here.

On remand, the trial court readopted many of the factual findings contained in its original order, deleted other findings, and made two new findings. It then reaffirmed its previous order.

---

1. This case was originally filed as an appeal in both the Court of Appeals and this court. We transferred the case to this court pursuant to C.A.R. 50.

2. Section 6–4–101, 2 C.R.S. (1984 Supp.), states as follows:

    **Illegal restraint of trade.** Every contract or combination in the nature of a trust or conspiracy in restraint of trade or commerce is declared illegal. Every combination, conspiracy, trust, pool, agreement, or contract intended to restrain or prevent competition in the supply or price of any article or commodity constituting a subject of trade or commerce in this state, or every combination, conspiracy, trust, pool, agreement, or contract which controls in any manner the price of any such article or commodity, fixes the price thereof, or limits or fixes the amount or quantity thereof to be manufactured, produced, or sold in this state, or monopolizes or attempts to monopolize any part of the trade or commerce in this state, is declared an illegal restraint of trade.

    This statute is currently codified at § 6–4–101, 2 C.R.S. (1988 Supp.).

## I

The central issue in this case is whether certain membership requirements of the Board granting it discretion to restrict access to the Colorado Springs Multiple Listing Service (MLS) [3] constitute a group boycott or unwarranted refusal to deal in violation of section 6–4–101, 2 C.R.S. (1984 Supp.). In *CSBR I* we discussed two types of analysis applicable to this issue: *per se* analysis, *see Northern Pacific Ry. Co. v. United States*, 356 U.S. 1, 78 S.Ct. 514, 2 L.Ed.2d 545 (1958), and rule of reason analysis, *see Standard Oil Co. v. United States*, 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619 (1911). We concluded that the evidence adduced at trial did not support the conclusion that the Board's adoption of these membership requirements constituted a *per se* violation of section 6–4–101. However, we remanded the case to permit the trial court to determine whether the Board's practices constituted an impermissible group boycott under the rule of reason analysis. Our order of remand contained the following comments:

> The trial court should identify those facts it relies upon to define the extent and the mode of operation of the relevant geographic and product market; to establish the relative economic power of the Board and the MLS in that market and the actual as well as potential economic effects of the combination of that power and the challenged membership practices on that market; to identify the pro-competitive and anti-competitive effects of the challenged practices on that market; and ... to determine whether

the State has met its burden of establishing that the anti-competitive effects of the challenged practices outweigh the pro-competitive effects of those practices in the relevant market.

*People v. Colorado Springs Bd. of Realtors, Inc.*, 692 P.2d 1055, 1068–69 (Colo. 1984).

In rendering its judgment on remand, the trial court relied upon the record from the September 1980 trial, including the qualifications for Board membership.[4] It also readopted the following pertinent findings from its original order:

4. Although other means of exposing listings do exist within the El Paso County market, no means can compare with the Colorado Springs Board of Realtors Multiple Listing Service in scope, efficiency or credibility.

. . . .

6. In El Paso County access to the Multiple Listing Service is tied to membership in the Colorado Springs Board of Realtors. This arrangement carries with it the power to regulate competition in the improved residential real estate market, and that power has been exercised in the past to discourage the use of fixed fee listings and to discourage the employment of part time agents.

. . . .

11. Although no evidence showed that any application for membership in the Colorado Springs Board of Realtors has been refused in recent years for any reason, the power of that organization to tie membership in it to access to the multiple listing service is per se a combi-

---

3. The MLS is a marketing service which provides current information on property for sale in El Paso County including improved residential real estate. It publishes weekly catalogs containing descriptive listings of such real estate, as well as quarterly "sold properties" catalogs which state the sale price, days on the market and other information about listed properties that have been sold. MLS publications are available to all member brokers and to all salespersons employed in a member broker's office. The MLS is administered by the Board.

4. The trial court found that membership in the Board requires payment of dues and satisfaction of the following requirements:

A. Have a valid real estate license and be actively engaged in the real estate businesses [sic] and its recognized branches;
B. Have a place of business within the Board's jurisdiction;
C. Have a favorable business reputation in the community;
D. Have a sound credit rating;
E. Complete a Board indoctrination course; [and]
F. Signify an intention to abide by the Constitution, By–laws, policies and regulations of the Board[,] [Colorado Association of Realtors] and [National Association of Realtors].

nation restraining competition in the improved residential real estate market, unless that requirement can be justified under the rule of reason.

The trial court entered new findings to the effect that Board membership requirements and bylaws had in the past prohibited competition in commissions, denied membership to part-time real estate agents and conditioned membership on office location.

In applying the applicable legal standards to its revised findings, the trial court stated as follows:

[C]ertain of the existing membership criteria are unrelated to the efficient operation of the MLS and if applied in screening applications for membership would reduce competition by limiting access to the MLS.

The requirement that an applicant must have a sound credit rating is vague and the interpretive guidelines adopted by the N.A.R. [National Association of Realtors] increase the anti-competitive potential. The application of this requirement under the N.A.R. guidelines could deny membership to persons in bankruptcy or insolvency proceedings or experiencing financial difficulties that threaten neither [the Board] [n]or the customers dealing with them. The supervisory power of the State over agent and brokerage licenses and the bankruptcy laws are sufficient protection to both [the Board] and the general public. Therefore, the anti-competitive potential of this rule far outweighs any actual or potential pro-competitive benefit to the market.

The requirement of a favorable business reputation, even considering the guidelines published by the N.A.R. are vague and subject to anti-competitive application. Unresolved civil rights violations, violations of the licensing requirements or other violations of the law all have adequate remedies provided by state and federal law. Denial of membership based upon any more severe standard than that set by state and federal law would unreasonably restrict access to the MLS and reduce competition.

The anti-competitive potential of this rule far outweighs any actual or potential pro-competitive benefit to the market.

The trial court then concluded that in the absence of any pro-competitive benefits, the anti-competitive potential created by these two membership criteria violated section 6–4–101.

## II

■ We held in *CSBR I* that the Board's membership criteria and practices did not constitute *per se* violations of the prohibitions against group boycotts and certain tying arrangements contained in section 6–4–101, 2 C.R.S. (1984 Supp.). In its finding No. 11, readopted from its original order, the trial court states that the Board's power to tie Board membership to access to the MLS "is per se a combination restraining competition ... unless that requirement can be justified under the rule of reason." The Board argues that this language indicates that on remand the trial court applied an erroneous legal standard.

Were this the only language contained in the trial court's order, we would be inclined to agree with the Board's argument. If a defendant's acts constitute a *per se* antitrust violation, no justification based on a rule of reason analysis can alter that fact.

However, the trial court also examined the pro-competitive and anti-competitive effects of these membership criteria in light of the Board's prior practices, found that they generated no pro-competitive effects, and concluded that they did create considerable anti-competitive potential. The trial court then weighed the pro-competitive and anti-competitive effects of the two criteria, as required by the rule of reason. In viewing the trial court's order as a whole, we conclude that it applied the proper legal standards. *See, e.g., Marin County Board of Realtors, Inc. v. Palsson,* 16 Cal.3d 920, 549 P.2d 833, 130 Cal.Rptr. 1 (1976); *Grillo v. Board of Realtors,* 91 N.J.Super.Ct. 202, 219 A.2d 635 (1966).

■ The trial court's conclusion that the requirement of a favorable business reputation is too broad to permit objective appli-

cation thereof and serves only to permit the Board to reject otherwise qualified applicants at its sole discretion was amply supported by the testimony of a representative of the National Association of Realtors. This witness acknowledged that this criterion was arbitrary in nature and testified that the national association does not require local boards to adopt it.

The evidence in this case also supports the conclusion that the requirement of a sound credit rating is equally susceptible to arbitrary application to deny membership to applicants whose financial circumstances pose no threat to MLS members, buyers or sellers. While the fiscal integrity of MLS members is important to instill confidence in the program, no evidence was introduced in this case to suggest that statutory and common law bankruptcy and contract principles, when coupled with the fact that the General Assembly has adopted comprehensive laws regulating the real estate profession, do not provide sufficient assurances of the financial stability of MLS members. *See United States v. Realty Multi–List, Inc.,* 629 F.2d 1351 (5th Cir.1980).[5]

In *United States v. Realty Multi–List, Inc.,* 629 F.2d 1351, the Fifth Circuit Court of Appeals applied a "facial unreasonableness" variation of the rule of reason analysis in concluding that certain membership criteria of a local multiple listing service violated federal antitrust law. The court held that some of the broadly discretionary membership requirements were sufficiently anti-competitive in potential that no evidence need be introduced to establish that they had in fact created anti-competitive effects in the past. The court indicated that adoption of this approach by federal trial courts could reduce the expenses and extraordinary amounts of time normally associated with antitrust litigation. This evidentiary shortcut has been approved as appropriate in some rule of reason cases by at least one noted expert on antitrust law. *See* P. Areeda, *VII Antitrust Law: An Analysis of Antitrust Principles and*

*Their Application* ¶ 1508 at 403 (1983). Its efficacy has also been questioned. *See National Bancard Corp. v. Visa U.S.A.,* 596 F.Supp. 1231, 1256 (S.D.Fla.1984), *aff'd,* 779 F.2d 592 (11th Cir.1986), *cert. denied,* 479 U.S. 923, 107 S.Ct. 329, 93 L.Ed.2d 301. In terms of evidentiary production, no bright line is available to distinguish *per se* from rule of reason analysis. *See, e.g., NCAA v. Board of Regents of Univ. of Oklahoma,* 468 U.S. 85, 104 n. 26, 104 S.Ct. 2948, 2961 n. 26, 82 L.Ed.2d 70 (1984); *Broadcast Music, Inc. v. C.B.S.,* 441 U.S. 1, 99 S.Ct. 1551, 60 L.Ed.2d 1 (1979).

It does not appear from the record that the trial court applied a "facial unreasonableness" test here. It did apply the rule of reason analysis to the facts of the case, and concluded that the People satisfied their burden of establishing that the anti-competitive effects of the two criteria here involved outweighed any pro-competitive results their adoption might have engendered. The record supports that determination. We therefore affirm the trial court's conclusion that in adopting these two membership criteria the Board improperly refused to deal with competitors and that such group boycott violated section 6–4–101, 2 C.R.S. (1984 Supp.).

### III

The Board also argues that the trial court's injunctive order is too broad in scope to permit reasonable application thereof to the Board's activities. The State has filed a cross-appeal asserting that if this court finds the relief granted by the trial court to be too broad in scope, this court should correct the decree. We agree that the decree lacks sufficient specificity and should be modified.

■ A trial court has broad discretion to formulate the terms of injunctive relief when equity so requires. *McFadzean v. Lohr,* 152 Colo. 31, 380 P.2d 20 (1963).

---

5. In *Brown v. Indianapolis Board of Realtors,* 1977–1 *Trade Cases* (CCH) ¶ 71,611 (S.D.Ind. 1977), the court concluded that a favorable business reputation requirement for membership in the defendant Board was reasonable. The opinion does not indicate what evidence was presented to support that conclusion.

However, an injunction prohibiting conduct must be sufficiently precise to enable the party subject to the equitable decree to conform its conduct to the requirements thereof. C.R.C.P. 65(d); *see Grand River Ditch Co. v. Ruane*, 82 Colo. 333, 259 P. 514 (1927); *Williams v. United States*, 402 F.2d 47 (10th Cir.1967).

 In this case, the remedial portion of the trial court's judgment incorporated the following pertinent language from its initial decree:

It is Ordered: that an injunction issue to the defendant, Colorado Spring's [sic] Board of Realtors, to refrain from adopting, publishing or enforcing any requirement for initial or continuing membership not necessary to the efficient operation of the multiple listing service, and to refrain from imposing any initiation fee or membership dues to be dispersed [sic] for any purpose not necessary to the efficient operation of the multiple listing service.

Because compliance with this order will require some change in the current membership requirements and by-laws of the Colorado Spring's [sic] Board of Realtors, the defendant is to make a report of compliance or to present a plan of compliance within 120 days of this order.

This decree in effect simply prohibits the Board from violating Colorado's antitrust laws and requires the Board to submit general plans and reports to the court indicating that its revenues will not be spent for activities that violate the antitrust laws.

 The sweeping language of the decree does not sufficiently inform the Board of the steps it must take to avoid violations thereof. The trial court's amended order noted that, prior to the final order in this case, the Board had rescinded two anticompetitive rules prohibiting flat rate commissions and requiring compliance with zoning laws as a condition of membership. In view of the fact that the Board's actual violations of the antitrust statute, as found by the trial court, consisted of the adoption of two specific membership criteria; that none of the criteria have been applied to deny membership in the Board to any applicant; and that no damages have been sustained by any party as the result of the Board's adoption of these criteria, the appropriate sanction is to prohibit the Board from enforcing the offensive membership criteria. *See, e.g., Cantor v. Multiple Listing Serv.*, 568 F.Supp. 424, 432 (S.D.N.Y. 1983). In view of the trial court's specific findings and the clear purpose of its remedial decree to ensure future compliance with section 6-4-101, 2 C.R.S. (1984 Supp.), we conclude that modification of that decree is warranted by the record as a whole. Accordingly, we reverse that portion of the trial court's order describing the conduct to be carried out by the Board and remand the case to that court with directions to enter an order prohibiting the Board from prohibiting flat rate commissions or applying requirements of compliance with zoning laws, a favorable business reputation or a sound credit rating to any applicant for membership.

IV

The judgment of the trial court is affirmed insofar as it concludes that in adopting the requirements that MLS members possess a sound credit rating and a favorable business reputation the Board violated section 6-4-101. The injunctive relief ordered by the trial court is vacated, and the case is remanded to that court with directions to enter an order in conformity with this opinion.