**Charles H. BEDARD, M.D.,**
**Plaintiff–Appellant,**

v.

**Jerry MARTIN and Madelyn E. Martin,**
**f/k/a Madelyn E. DeHoff,**
**Defendants–Appellees.**

No. 03CA0813.

Colorado Court of Appeals,
Div. V.

Sept. 9, 2004.

Banner, Bower, Chostner, Kwitek & Ohlsen, P.C., Douglas J. Kwitek, Pueblo, Colorado, for Plaintiff–Appellant.

Mullans, Piersel & Reed, P.C., Shannon Reed, Pueblo, Colorado, for Defendants–Appellees.

Opinion by Judge RUSSEL.

Plaintiff, Charles H. Bedard, appeals the trial court's judgment in favor of defendants, Madelyn E. Martin and Jerry Martin. Bedard also appeals the award of attorney fees to Madelyn Martin. We affirm in part, reverse in part, and remand for further proceedings.

## I. Background

Bedard bought a 30–acre parcel of land from Madelyn Martin for $12,000. Ms. Martin's husband, Jerry Martin, a licensed real estate agent, prepared the contract for sale and acted as Ms. Martin's agent. Ms. Martin gave Bedard a warranty deed on the property and a title insurance policy with a maximum benefit of $12,000.

After Bedard had spent $75,000 improving the property, he discovered that the property had never belonged to Ms. Martin. Bedard brought an action against the true owner to quiet title, naming the Martins as additional defendants. The owner counterclaimed to quiet title in himself. Bedard then settled with the owner, paying $40,000 to acquire good title.

The title insurer compensated Bedard in the amount of the $12,000 policy limit. Bedard assigned to the insurer his rights and remedies against Ms. Martin "to the extent of [the insurer's] payment hereunder, to which rights and remedies [the insurer] is hereby subrogated."

As against Ms. Martin, Bedard sought to recover (1) the difference between the $12,000 he had received from the insurer and the $40,000 he had to pay for the property, (2) interest on the $12,000 purchase price, under various theories, and (3) attorney fees. Bedard asserted tort claims against Mr. Martin.

The trial court granted summary judgment in favor of the Martins as to four of Bedard's five claims. It later dismissed Bedard's last claim pursuant to C.R.C.P. 12(b)(5) and (c). It also granted Ms. Martin's motion for attorney fees and costs pursuant to a fee-shifting provision in the sales contract. Bedard appeals the court's disposition of three claims as well as the imposition of attorney fees and costs.

## II. Breach of Warranty of Title

The trial court dismissed Bedard's claim for breach of the warranty of title pursuant to C.R.C.P. 12(b)(5) and (c) because it concluded that Bedard had already received the full measure of damages to which he was entitled. Bedard argues that the court erred because he is entitled to damages beyond the insurer's $12,000 payment. We agree with Bedard.

### A. Applicable Standards

■ A motion to dismiss pursuant to C.R.C.P. 12(b)(5) tests the sufficiency of a plaintiff's complaint. This type of motion is looked on with disfavor and should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him or her to relief. The court must accept all averments of material fact as true, and all the allegations in the complaint must be viewed in the light most favorable to the plaintiff. We review the trial court's ruling de novo. *Verrier v. Colo. Dep't of Corr.*, 77 P.3d 875, 877 (Colo.App.2003).

■ The standard under C.R.C.P. 12(c) is essentially consistent with that employed in resolving a motion to dismiss for failure to state a claim, and the rulings are likewise reviewed de novo. *Connecticut Gen. Life Ins. Co. v. A.A.A. Waterproofing, Inc.*, 911 P.2d 684, 687 (Colo.App.1995), *aff'd sub nom.*

*Constitution Assocs. v. New Hampshire Ins. Co.*, 930 P.2d 556 (Colo.1996).

### B. Assignment of Claims

■ When Bedard settled with the title insurer, he executed a contract entitled "Settlement Agreement, Release, and Assignment." Ms. Martin contends that, under this contract, Bedard transferred his entire breach of warranty claim to the insurer. Thus, Ms. Martin argues, Bedard cannot maintain a separate action against her on this claim. Bedard argues that he assigned his claim only to the extent that he has been compensated—that is, only up to $12,000. We agree with Bedard.

■ We must construe the terms of the contract to reflect the reasonable expectations of Bedard and the insurer. We ascertain their intent by looking to the plain language of the agreement and will enforce the agreement as written unless there is an ambiguity in the language. *Allen v. Pacheco*, 71 P.3d 375, 378 (Colo.2003). A contract should be interpreted to harmonize and to give effect to all its provisions, if possible. *Mid Century Ins. Co. v. Gates Rubber Co.*, 43 P.3d 737, 739 (Colo.App.2002).

Here, the relevant assignment states:

FURTHERMORE, INSURED ... does hereby assign and transfer to [insurer] all rights and remedies against insured's grantor, [Ms. Martin], to the extent of [insurer's] payment hereunder, to which rights and remedies [insurer] is hereby subrogated.

The plain meaning of this language indicates that Bedard and the insurer intended to create only a partial assignment of Bedard's claims. Were this contract to be interpreted, as Ms. Martin suggests, to assign Bedard's entire cause of action, the words "to the extent of [insurer's] payment hereunder" would be rendered meaningless. Because Bedard has assigned to the insurer only $12,000 of his claim, he may maintain a separate action against Ms. Martin to recover damages beyond $12,000.

Ms. Martin does not contend that this partial assignment could subject her to separate lawsuits on the same obligation. But to the

extent that this concern is implicated, we note that she was not without protection. Early decisions of the Colorado Supreme Court indicate that, unless the obligor approves a partial assignment, the partial assignee cannot bring a separate action against the obligor. *See Cotton v. Roberts Bros., Peterson, Shirley & Gunther*, 83 Colo. 505, 266 P. 1116 (1928); *City of Pueblo v. Dye*, 44 Colo. 35, 96 P. 969 (1908). More recently, courts have observed that the obligor is protected against the risk of multiple lawsuits by rules that provide for joinder and interpleader. *See, e.g., In re Fine Paper Litigation Washington*, 632 F.2d 1081 (3d Cir.1980)(partial assignments are recognized, but the rights of the obligor to be free of successive and repeated suits growing out of the same basic facts are also protected by the prudent use of joinder rules). Because this is a suit by the partial assignor, and because Ms. Martin did not seek to join the partial assignee, we need not address the application of either line of authority here.

## C. Damages for Breach of Warranty

The parties dispute the correct measure of damages for breach of the warranty of title. We conclude that, having assigned away his claim against Ms. Martin to the extent of the insurance company's payment, and having been compensated in an amount equal to the purchase price, Bedard may not maintain a separate action to recover (1) interest, (2) the additional money paid to the true owner of the property, or (3) mesne profits. He may, however, recover reasonable attorney fees and costs incurred in litigation with the true owner.

### 1. Interest

 Generally speaking, interest may be an element of damages in a breach of warranty case. *Taylor v. Wallace*, 20 Colo. 211, 213, 37 P. 963, 964 (1894) (plaintiff may recover "the value of the land when conveyed, and this value is determined by the price paid, and that sum, with interest, is the limit of the measure of damages recoverable by such grantee"); *see also Morgan v. Hendrie Bros. & Bolthoff*, 34 Colo. 25, 81 P. 700 (1905). But this interest cannot be recovered apart from the underlying debt:

> [W]here interest is due because the debtor has expressly agreed to pay it, the interest is considered as an integral part of the debt, and the right to recover it may remain, even after the principal has been paid. But where interest is claimed as damages by virtue of the nonpayment of a debt when due, and for that reason is allowed by law, it is then considered not an integral part of the debt, but merely as an incident to the debt, and in such cases, when the principal is paid and accepted without interest, the right to interest is extinguished.

*Bassick Gold Mine Co. v. Beardsley*, 49 Colo. 275, 276, 112 P. 770, 771 (1911); *see also Stewart v. Barnes*, 153 U.S. 456, 462, 14 S.Ct. 849, 851, 38 L.Ed. 781 (1894) (if the principal sum has been paid, the opportunity to acquire a right to damages is lost); *Guy James Constr. Co. v. Trinity Indus., Inc.*, 644 F.2d 525, 532 ("An acceptance of payment on a principal indebtedness extinguishes the claim for prejudgment interest on such indebtedness."), *modified*, 650 F.2d 93 (5th Cir.1981).

 Therefore, when Bedard accepted a payment of $12,000 from the insurer, that amount representing the full purchase price of the property, he lost his right to recover prejudgment interest.

### 2. Settlement with Owner

 Once Bedard discovered the defect in title, he entered into a settlement with the true owner, essentially buying the property for $40,000. Bedard argues that he is now entitled to recover the $40,000 from Ms. Martin as damages for breach of warranty of title. We disagree.

Bedard cites *Morgan v. Hendrie Bros. & Bolthoff, supra*, for the proposition that, in an action for breach of warranty, the plaintiff may recover "such damages as he necessarily sustained in protecting his title." Bedard argues that the $40,000 he paid the owner falls within this category. But the *Morgan* court expressly rejected this measure of damages:

The authorities are in conflict as to the measure of damages in case of the breach of a warranty of title, express or implied, of both real and personal property; one line holding the proper measure in such case to be the value of the property—according to some, at the date of the sale; to others, at the date of the vendor's dispossession—while another line holds the proper measure to be the purchase price, with interest thereon. As to real property, the latter rule has been adopted by this court.

*Morgan, supra,* 34 Colo. at 26–27, 81 P. at 700 (citing *Taylor v. Wallace, supra*); *see also Gray v. Paxton,* 662 P.2d 1105, 1107–08 (Colo.App.1983) (Where a defendant has purported to complete a real estate sale with the plaintiff for property he did not own, he is not liable for the full amount plaintiff spent to repurchase the property. A purchaser is deemed to have relied upon his own investigation of title, and a title defect may not be demonstrated for years, at a time when the entire character of the neighborhood might have changed and when values have increased many fold.); Roger A. Cunningham et al., *The Law of Property* § 11.13 (1984) ("A claim based on deed covenants, other than the covenant of further assurances, can give rise only to damages, and recovery is nearly always limited to the amount the grantor received for the property, plus interest and in some cases attorneys' fees.").

When the *Morgan* court referred to the damages the plaintiff "necessarily sustained in protecting his title," it referred not to the purchase price of the property but, as further explained in part II(C)(4) of this opinion, attorney fees the plaintiff incurred in unsuccessfully defending his title against the true owner. We therefore affirm the trial court's conclusion that Bedard could not recover the $40,000 that he paid the true owner to acquire the property.

### 3. Mesne Profits

■ Mesne profits are "[t]he profits of an estate received by a tenant in wrongful possession between two dates." *Black's Law Dictionary* 1227 (7th ed.1999).

■ In response to the Martins' motion for summary judgment, Bedard produced deposition testimony indicating that the true owner had demanded payment of back rent because Bedard had been in wrongful possession of the property. Bedard alleged that back rent was included in the $40,000 settlement, and he argued that he was entitled to recover the amount of back rent—as mesne profits—from Ms. Martin. For support, Bedard relied on *Taylor v. Wallace, supra.*

It is unclear whether Bedard makes this argument on appeal. In his opening brief, Bedard mentions mesne profits only in support of his request for interest on the purchase price. And in his reply brief, Bedard merely states: "Madelyn Martin would have this Court deny Bedard the mesne profits which he is entitled to under the law."

Assuming that Bedard has sufficiently raised and preserved this argument, it nevertheless fails on the merits. As noted above, the general measure of damages for a plaintiff in Bedard's position is the purchase price plus interest and attorney fees and costs incurred in defending title against the true owner. *See Morgan v. Hendrie Bros. & Bolthoff, supra.*

Bedard's reliance on *Taylor v. Wallace, supra,* is misplaced. Under *Taylor,* mesne profits are relevant only because they delimit the plaintiff's ability to recover interest:

There are rules that may reduce the amount of recovery within this limit. Interest is allowed for the time that the grantee is liable to the true owner for mesne profits; and when, by the statute of limitations, mesne profits are recoverable only for a certain number of years, interest will not be allowed for any longer time. . . .

*Taylor v. Wallace, supra,* 20 Colo. at 214, 37 P. at 964.

Bedard has provided no authority, and we have found none, that would allow him to recover the back rent that he paid to the true owner.

### 4. Attorney Fees and Costs

■ Relying on *Weaver v. First National Bank,* 138 Colo. 83, 330 P.2d 142 (1958), Bedard contends that attorney fees and costs

may be recovered as damages in an action for breach of warranty. Under *Weaver*, Bedard argues, his complaint should not have been dismissed because he could have proved that he incurred fees and costs in prosecuting this action against the true owner and Ms. Martin. We agree in part.

In *Weaver*, the plaintiff bought livestock from the defendant. Later, the plaintiff was sued by the true owner of the livestock and was forced to relinquish possession. The plaintiff then sued the defendant for breach of the warranty of title. The court held that, as part of the damages for breach of warranty, the defendant was liable for the plaintiff's attorney fees:

> Under the circumstances of this case the expense occasioned by the employment of counsel is attributable to [defendant's] breach of the warranty of title to the cows. The attorney's fees constitute a part of the damage which plaintiff sustained in consequence of such breach. *Balte v. Bedemiller*, 37 Or. 27, 60 P. 601, 82 Am.St.Rep. 737; *Lipsie v. Dickey*, 375 Pa. 230, 100 A.2d 370.

*Weaver, supra,* 138 Colo. at 90, 330 P.2d at 146.

In our view, *Weaver* supports Bedard's attempt to recover attorney fees and costs that he incurred in his quiet title action against the true owner. But *Weaver* does not support Bedard's attempt to recover fees and costs incurred in his suit against Ms. Martin. The former can be regarded as damage sustained as a result of Ms. Martin's breach of warranty; the latter cannot.

Our view is supported by the cases on which the *Weaver* court relied. These cases permit recovery of fees and costs incurred while defending title against a third party. *See Balte v. Bedemiller*, 37 Or. 27, 32–33, 60 P. 601, 602 (1900) ("If the purchaser defends the title against an action brought by a third party, of which the vendor had notice, the latter will be compelled to pay, in case the title fails, not only the price received, and interest thereon, but also the costs and expenses of the defense."); *Lipsie v. Dickey*, 375 Pa. 230, 236, 100 A.2d 370, 373 (1953) (plaintiff in breach of warranty case could recover attorney fees and costs expended in a previous suit in which he unsuccessfully defended his title against a third party). And our view comports with the general rule. *See* Cunningham, *supra*, § 11.13 (grantee may generally recover court costs and reasonable attorney fees incurred while litigating the title against the true owner, but fees in the action against the grantor on the title covenants are not recoverable).

Accordingly, the trial court erred in dismissing Bedard's claim for reasonable attorney fees and costs incurred in litigating title against the true owner. Bedard may seek to recover those fees and costs from Ms. Martin. On remand, because he sued the true owner and the Martins simultaneously, Bedard must establish the amount of attorney fees and costs that are attributable to the prosecution of his quiet title claim, his defense against the owner's quiet title claim, and the settlement of those claims.

Bedard's success or failure in proving these damages will be relevant to the trial court's determination of the "prevailing party" under the fee-shifting provision between Bedard and Ms. Martin, as discussed in part V, below.

### III. Unjust Enrichment

■ Contrary to Bedard's contention, his claim of unjust enrichment was properly dismissed on summary judgment.

■ Summary judgment is appropriate only if the pleadings and supporting documents demonstrate that there is no genuine issue for trial as to any material fact and that the moving party is entitled to judgment as a matter of law. C.R.C.P. 56. The burden is on the moving party to establish that no genuine issue of fact exists, and any doubts in this regard must be resolved against the moving party. We review these issues de novo. *Aspen Wilderness Workshop, Inc. v. Colo. Water Conservation Bd.*, 901 P.2d 1251, 1256 (Colo.1995).

■ Unjust enrichment is a theory of recovery that involves an implied contract at law when the parties either have no express contract or have abrogated it. *See Dudding v. Norton Frickey & Assocs.*, 11 P.3d 441,

444 (Colo.2000). In general, a party cannot recover for unjust enrichment by asserting a quasi-contract when an express contract covers the same subject matter because the express contract precludes any implied-in-law contract. *Interbank Invs., LLC v. Eagle River Water & Sanitation Dist.,* 77 P.3d 814, 816 (Colo.App.2003).

Here, it is undisputed that Bedard and Ms. Martin entered into a contract for sale of the property. This written contract covers the same subject matter as Bedard's unjust enrichment claim and thus precludes any implied-in-law contract. Therefore, an action for unjust enrichment will not lie.

### IV. Negligent Misrepresentation

■ Bedard argues that the court erred when it dismissed on summary judgment his negligent misrepresentation claim against Mr. Martin. We disagree.

As stated above, our review of summary judgment is de novo. *Aspen Wilderness Workshop, Inc. v. Colo. Water Conservation Bd., supra.*

■ To establish a claim for negligent misrepresentation, the plaintiff must demonstrate that the defendant supplied false information in a business transaction and failed to exercise reasonable care or competence in obtaining or communicating the information upon which the plaintiff justifiably relied. The misrepresentation must be of a material past or present fact. *Zimmerman v. Dan Kamphausen Co.,* 971 P.2d 236, 240 (Colo. App.1998). If the plaintiff has access to information that was equally available to both parties and would have led to discovery of the true facts, he has no right to rely upon the misrepresentation. *Balkind v. Telluride Mountain Title Co.,* 8 P.3d 581, 587 (Colo. App.2000).

Bedard argues that Mr. Martin made three statements that constitute negligent misrepresentations: (1) he knew the property "like the back of his hand," (2) it would be a waste of money to obtain a survey, and (3) he had gone to the courthouse to investigate title and then relayed to Bedard that "this guy down there says this is a real mess down here in this part—by the river, but this is

your property here, and he told me what was mine, ours."

We reject this argument for three reasons.

First, it does not appear that these statements constitute misrepresentations of fact. Bedard does not dispute that Mr. Martin knew the property well ("like the back of his hand"). Neither does he dispute that Mr. Martin went to the courthouse to investigate title. Nor does he dispute that someone ("this guy") made the statements that Mr. Martin relayed. And though Bedard disputes that obtaining a survey would have been a waste of time, this statement was merely an expression of opinion and thus cannot support a misrepresentation claim. *Mehaffy, Rider, Windholz & Wilson v. Cent. Bank Denver,* 892 P.2d 230 (Colo.1995).

■ Second, even if we regarded Mr. Martin's statements as misrepresentations, Bedard failed to show a genuine issue of material fact on the question of reliance. Bedard did not rely on Mr. Martin's assurances of good title. Instead, he obtained title insurance to protect his investment. Bedard's second amended complaint admits that he was "[r]elying upon a warranty deed and insured title," not Mr. Martin's statements, when he began improving the property. And when the Martins moved for summary judgment, Bedard failed to respond with "specific facts showing that there is a genuine issue for trial." C.R.C.P. 56(e). Summary judgment was therefore appropriate.

■ Third, Bedard's reliance, if any, would not have been justified. Bedard could have discovered on his own whether Ms. Martin actually held title, which was a matter of public record. The contract gave Bedard the right to inspect all title documents, but stated, "If seller or listing company does not receive Purchaser's notice by the date(s) specified above, Purchaser shall be deemed to have accepted the condition of title as disclosed by the Title Documents as satisfactory." Because the parties were equally capable of discovering the true facts, Bedard's negligent misrepresentation claim fails. *See M.D.C./Wood, Inc. v. Mortimer,* 866 P.2d 1380 (Colo.1994).

## V. Fee–Shifting Provision

■ Bedard argues that the trial court erred in awarding Ms. Martin her attorney fees pursuant to a fee-shifting provision in the sales contract. Ms. Martin argues that she is entitled to her attorney fees incurred both in the trial court and on appeal. While we reject Bedard's arguments, we agree that the case must be remanded.

■ Attorney fees generally are not recoverable by the prevailing party in a contract or tort action. But the parties may alter this rule by agreement. *Cont'l W. Ins. Co. v. Heritage Estates Mut. Housing Ass'n*, 77 P.3d 911, 913 (Colo.App.2003). Fee-shifting provisions replace the otherwise applicable rule that the losing party does not have to pay the winner's attorney fees. *Wheeler v. T.L. Roofing, Inc.*, 74 P.3d 499, 503 (Colo. App.2003).

Bedard argues that, because the terms of his contract merged into the deed and were extinguished at closing, the "prevailing party" provision no longer survives. He also argues that, even if the provision survived the closing, it is inapplicable because this dispute does not arise out of the contract. We reject both arguments.

■ Fee-shifting provisions are not extinguished by merger. A buyer's acceptance of a deed tendered in performance of a sales contract extinguishes by merger only those covenants relating to "title, quantity, possession, or emblements of the land." *Lasher v. Paxton*, 956 P.2d 647, 648 (Colo.App.1998). Covenants that are not intended to be incorporated in the deed, or which are not necessarily satisfied by the execution and delivery of the deed, survive. *Coe v. Crady Davis Corp.*, 60 P.3d 794, 796 (Colo.App.2002) ("Recognizing that *Lasher* did not hold specifically that a fee-shifting provision survived expungement by the merger doctrine, we now so hold."). Therefore, because the fee-shifting provision did not merge into the deed, it remains enforceable.

■ With regard to Bedard's argument that the present dispute is not within the scope of the fee-shifting provision, the relevant provision stated, "Anything to the contrary notwithstanding, in the event of any litigation or arbitration arising out of this contract, the court shall award to the prevailing party all reasonable costs and expense [sic], including attorney fees."

■ The phrase "arise out of" has been interpreted by Colorado courts to mean "originate from," "grow out of," or "flow from," and this interpretation has been specifically applied to fee-shifting provisions in real estate contracts. *See Roberts v. Adams*, 47 P.3d 690, 698 (Colo.App.2001).

Here, it is apparent that the litigation arose from the contract for sale. Although asserted under various theories, all of Bedard's claims against Ms. Martin arose from the sale of the property. The contract embodied that sale. We therefore agree with the trial court that Bedard's claims against Ms. Martin are subject to the fee-shifting provision.

■ The determination of which party prevailed for purposes of a fee-shifting agreement is committed to the trial court's discretion. *Dennis I. Spencer Contractor, Inc. v. City of Aurora*, 884 P.2d 326, 328 n. 6 (Colo.1994); *Brock v. Weidner*, 93 P.3d 576 (Colo.App.2004). When each party prevails in part, the trial court generally must select one party as the overall winner for purposes of the fee-shifting agreement. *See Brock v. Weidner, supra* (fee-shifting provisions generally contemplate that there will be one winner and one loser regarding payment of attorney fees; when the provision states that the prevailing party "shall be entitled" to recover fees, the trial court must award reasonable fees to the prevailing party). The trial court is in the best position to determine which party has prevailed. *Wheeler, supra*, 74 P.3d at 504.

■ Because we remand for further proceedings on Bedard's claim for damages (measured by the amount of attorney fees and costs that Bedard incurred in defending his title against the true owner), we must also reverse, as premature, the trial court's determination that Ms. Martin was the prevailing party within the meaning of the fee-shifting provision. After the issue of dam-

ages has been decided, the trial court may determine the prevailing party and award reasonable attorney fees, including fees incurred in this appeal and on remand.

The judgment is reversed as to Bedard's claim for damages incurred in defending title against the true owner, and the case is remanded for further proceedings on that claim and for determination of the prevailing party and the reasonable attorney fees incurred in this action. In all other respects, the judgment is affirmed.

Judge NIETO and Judge WEBB concur.