**DOVE VALLEY BUSINESS PARK ASSOCIATES, LTD., a Colorado limited partnership; Abacus Group Realty Holding Company II, a Delaware corporation, as successor by merger to Diversified Land Holdings, Inc., a Delaware corporation; Havana Street, Ltd., a Colorado limited partnership and Gullwing Acres Limited Liability Co., a Wyoming limited liability company; and Colorado National Bank, a federally charted bank, as successor by merger to Bank Western, a federal bank, Plaintiffs–Appellants,**

v.

**The BOARD OF COUNTY COMMISSIONERS OF ARAPAHOE COUNTY, Colorado; and Dorothy J. Vogt, Treasurer, Arapahoe County, Colorado, Defendants–Appellees.**

No. 94CA1883.

Colorado Court of Appeals, Div. IV.

Dec. 21, 1995.

Rehearing Denied Jan. 25, 1996.

Certiorari Granted Sept. 23, 1996.

Law Offices of Bennett S. Aisenberg, P.C., Bennett S. Aisenberg, H. Paul Himes, Jr., Barry J. Goldstein, Denver, for Plaintiffs–Appellants.

John E. Bush, Jr., Acting County Attorney, Richard F. Mutzebaugh, Assistant County Attorney, Littleton, for Defendants–Appellees.

Opinion by Judge DAVIDSON.

Plaintiffs, Dove Valley Business Park Associates, Ltd.; Abacus Group Realty Holding Company II; Havana Street, Ltd. and Gullwing Acres Limited Liability Co.; and Colorado National Bank, appeal from a declaratory judgment entered by the trial court dismissing plaintiffs' statutory, constitutional, and equitable claims for interest due from

defendants, the Board of County Commissioners of Arapahoe County and the treasurer of Arapahoe County (county), on erroneously assessed property taxes. We affirm in part and reverse in part.

Plaintiffs, owners of commercial real estate in Arapahoe County, failed to pay in a timely manner assessed 1988, 1989, and/or 1990 property taxes. As a result, under the provision currently codified at § 39–10–104.5, C.R.S. (1994 Repl.Vol. 16B), taxes became delinquent and penalty interest accrued at a rate of 12 percent per year, beginning May 1 of the year following the assessment.

In November of the year taxes became delinquent, the county sold tax liens on the properties at sales pursuant to § 39–11–101 et seq., C.R.S. (1994 Repl.Vol. 16B). Some of the tax liens were purchased by third parties, others were stricken off to the county when no other purchaser came forward. On the date of the tax sale, penalty interest ceased to accrue to the county, but redemption interest, at a rate of 15–16 percent, began to accrue to the holder of the tax lien certificate *See* §§ 39–11–115 and 39–12–103, C.R.S. (1994 Repl.Vol. 16B).

Plaintiffs redeemed—by paying the amount of taxes, penalty interest, sale costs, and redemption interest—at least two of the properties soon after the tax lien sales. *See* § 39–12–101, et seq., C.R.S. (1994 Repl.Vol. 16B).

Three of the plaintiffs waited several months after the tax lien sales to petition for abatement or refund of the taxes pursuant to Colo. Sess. Laws 1990, ch. 282, § 39–10–114 at 1719. Havana Street, Ltd., pursued the alternative protest and adjustment procedure, pursuant to Colo. Sess. Laws 1989, ch. 324, §§ 39–5–122 and 39–8–109. It is unclear from the record whether this plaintiff filed the protest before or after the tax lien sale.

Both protest and abatement procedures ultimately resulted in substantial reduction of the property taxes. For those properties not already redeemed, the county required the taxpayers to redeem the properties before the abatement/adjustment amount was used to reduce the tax due under either procedure. Some of the properties may not have been redeemed.

The county agreed that it was obligated to refund erroneously levied taxes, but refused to pay any refund interest or to reimburse plaintiffs for penalty interest or redemption interest paid by plaintiffs on the erroneously levied taxes. The trial court agreed with the county, and this appeal followed. We hold that the county is obligated to reimburse plaintiffs for penalty interest paid on the erroneously levied taxes. We further hold that the county must pay refund interest only from the date of payment of taxes by the taxpayer. Finally, we hold that the county is not required to refund or credit redemption interest.

## I.

### A.

#### Penalty Interest

Penalty interest is interest paid by the taxpayer to the county because of delinquency in payment of the taxes. When, as here, taxes are to be paid in a single installment, penalty interest accrues at a rate of one percent per month from May 1 of the year taxes are due until either the taxes are paid, or until the tax lien is sold. *See* § 39–10–104.5. We agree with plaintiffs that the county must reimburse them for any penalty interest plaintiffs have paid on the erroneously levied taxes.

Colo. Sess. Laws 1990, ch. 282, § 39–10–114(1)(b) at 1719, by its plain language, requires that "[a]ny taxes illegally or erroneously levied and collected, *and penalty interest thereon,* shall be refunded." *See also* § 39–8–109 ("he shall forthwith receive the appropriate refund of taxes *and penalty interest* ") (emphasis added).

Here, at the time that plaintiffs redeemed the property, the county collected from plaintiffs the levied taxes, with a setoff for the amount erroneously levied, together with penalty interest on the entire amount. Consequently, to the extent that plaintiffs have redeemed their properties, the county must reimburse plaintiffs for penalty interest paid on the erroneously levied taxes.

## B.

## Refund Interest

■ Refund interest is interest paid to the taxpayer by the county to compensate the taxpayer for having paid erroneously levied taxes. Refund interest, calculated on both the erroneously levied and collected taxes and any penalty interest thereon, accrues to the taxpayer at one percent per month, from the date that the payment of taxes and penalty interest is received by the treasurer. *See* §§ 39–10–114(1)(b) and 39–8–109.

At issue is the statutory interpretation of "payment of taxes," which initiates accrual of refund interest. Plaintiffs argue that a lien sale can constitute "payment of taxes" and that, therefore, the statute requires the county here to calculate refund interest from the date that a third party purchased the tax lien or the tax lien reverted to the county.

The county asserts that, to the contrary, under these statutory provisions, refund interest does not accrue until the taxpayer (or appellant, pursuant to § 39–8–109) pays the tax. Here, the county argues, that did not occur until plaintiffs redeemed their property from the tax lien sale. Further, it asserts that the statutes require the county to pay refund interest on the erroneously paid amount only from the date payment is received by the treasurer. Hence, since the reduction in valuation occurred the same day as payment, the county calculates that no refund interest accrued. We agree with the county.

The operative language of the pertinent statutes—which the parties agree applied to the tax years at issue—is illustrated in § 39–10–114(1)(b), which required that:

> Any taxes illegally or erroneously *levied and collected,* and penalty interest thereon, shall be *refunded* pursuant to this section, together with refund interest at the same rate as that provided for penalty interest [1% per month]. *Said refund interest shall accrue only from the date payment of taxes and penalty interest thereon was received by the treasurer.* (emphasis added)

*See also* § 39–8–109.

■ The goal of statutory construction is to ascertain and give effect to the intent of the General Assembly. To do so, courts look first to the statutory language. But, if the scope of the language is unclear or lends itself to alternative construction, the court may apply other rules of statutory construction and look to legislative history. *People v. Terry,* 791 P.2d 374 (Colo.1990).

■ Additionally, deference should be given to the interpretation of the statute by the officers charged with its administration, *Commercial Federal Savings & Loan Ass'n v. Douglas County Board of Equalization,* 867 P.2d 17 (Colo.App.1993), but tax statutes should "not be extended beyond the clear import of the language used, [and] [a]ll doubts will be construed against the government and in favor of the taxpayer." *Transponder Corp. v. Property Tax Administrator,* 681 P.2d 499, 504 (Colo.1984).

■ As between the owner/taxpayer and a third party who is not the taxpayer's agent or a person who has an interest in the property, the applicable versions of the statutes do not state explicitly from whom the taxes must be received to trigger accrual of refund interest. However, applying these interpretive rules of statutory construction to the refund provisions, we agree with the county that, although a tax lien sale or some other event might function to "pay the taxes" in a different context, payment of taxes *by the taxpayer* is prerequisite to accrual of refund interest.

It is first appropriate to look at the context in which statutory terms appear. *See State v. Hartsough,* 790 P.2d 836 (Colo.1990) Thus, it is important that § 39–10–114(1)(b) is a "refund" provision. The statute authorizes "refund," not simply "payment" by the county. *See* §§ 39–10–114 and 39–8–109. By definition, a "refund" is remitted to the party who already has paid. *Black's Law Dictionary* 1152 (Rev. 5th ed.1979) ("refunds" are "money received by the government ... to be refunded or restored *to the parties paying them* " (emphasis added)).

In § 39–10–114(1)(b), accrual of refund interest is tied to the date of payment, and disbursement is conditioned on the erroneous

taxes being "collected." Reading the entire section in concert, we conclude the object of the operative words "collected [from]," "payment [from]," and "refund [to]" must be the same, and the owner/taxpayer is the only possible entity.

Furthermore, § 39–10–114(1)(b) must be read and considered in the proper context of the full statute. *See Allen v. Charnes,* 674 P.2d 378 (Colo.1984).

In this light, an interpretation that refund interest is triggered by the owner/taxpayer's payment of taxes, and not by the purchase at a tax lien sale by a third party or by reversion to the county, is supported by the general organization of the articles of the taxation statute. Articles 8 and 10 of Title 39, titled, respectively, "County Board of Equalization" and "Collection," define, for real property, the relationship between the county and the owner/taxpayer as to property valuation and tax levy and collection. On the other hand, Articles 11 and 12, titled, respectively, "Sale of Tax Liens" and "Redemption," define the rights and obligations of the county, the owner/taxpayer, and third-party lien buyers with regard to tax lien sales.

Plaintiffs' interpretation of the refund provision, which equates the tax lien sale with "payment of taxes," violates this dichotomy, interjecting the event of the lien sale, as well as rights of the third party lien buyer, otherwise confined to Articles 11 and 12, into the provisions of Articles 8 and 10. Specifically, because the refund provisions are mandatory, equating the tax lien sale with payment of taxes would result in Article 10 creating rights in the tax lien buyer (as well as in the county) to receive refund interest should a taxpayer fail to redeem properties. *See* § 39–10–114(1)(b) (refund interest "shall accrue" and "shall be refunded"). Plaintiff's interpretation is, therefore, at odds with the surrounding statutory scheme. Finally, the legislative history of the 1981 refund provision indicates that payment by the taxpayer is required. *See* Colo. Sess. Laws 1981, ch. 446, § 39–10–114(1)(b) at 1838.

Initially, we note that a 1993 amendment specifically added a limiting phrase so that the pertinent sentence now reads explicitly that accrual of refund interest begins from the "date payment of taxes and delinquent [penalty] interest thereon was received by the treasurer *from the taxpayer.*" (emphasis added) Colo. Sess. Laws 1993, ch. 90, § 39–10–114 at 306; *see also* Colo. Sess. Laws 1993, ch. 90, §§ 39–4–109 ("from the petitioner") and 39–8–109 ("from the appellant") at 305–06.

The parties agree that this amendment does not control here, but disagree as to its impact. The county argues that the amendment simply clarifies the intent of the 1981 legislature; plaintiffs assert that it changed the meaning of the statutes. *See Bar 70 Enterprises, Inc. v. Tosco Corp.,* 703 P.2d 1297 (Colo.1985) (fn.5) ("when a statute is amended there is [a presumption of] intent to change the law, unless the amendment is such that it merely makes more specific what might have been implicit in the prior statutory terminology.").

Since a legislative amendment is considered in construing a former statute only to the extent that the legislative intent can be ascertained from the amendment, *Commercial Federal Savings & Loan Ass'n v. Douglas County Board of Equalization, supra; cf. People v. Holland,* 708 P.2d 119 (Colo.1985), the 1993 amendment is not direct evidence of the interpretation of the 1981 statute. Further, we agree with plaintiffs that it is unclear whether the 1993 amendment sponsors' expressed intent to "clarify" even referred to the statutory sections at issue here. *See* Hearings on H.B. 93–1040 before the House Local Government Committee, 59th General Assembly, First Session (January 25, 1993).

However, it is evident from the legislative history of the 1981 enactment that the original refund interest provisions were prompted by a desire to compensate, with interest, taxpayers who paid erroneously levied taxes and penalty interest on those taxes, and who subsequently received a refund of those monies. It is apparent that the intent of the General Assembly was to compensate the owner/taxpayer who had overpaid taxes and penalty interest from the time that taxpayer actually had paid out the money. Hearing on S.B. 167 before Senate Finance Committee, 53d General Assembly, First Session (Janu-

ary 15, 1981). *See Bea Kay Real Estate Corp. v. Aragon,* 782 P.2d 837 (Colo.App. 1989) (§ 39–10–114 interpreted to prevent windfall to both county and taxpayer).

Consequently, when, as here, there has been a tax lien sale, refund interest accrues to the taxpayer for erroneously levied taxes and penalty interest, pursuant to statute, from the time that the treasurer receives payment from the taxpayer.

## C.

### Redemption Interest

■■■■ Redemption interest is interest that a party must pay in order to redeem property from the tax lien sale. *See* § 39–12–103. Redemption interest accrues from the date of the tax lien sale at a rate of nine percentage points above the discount rate, *i.e.,* 15—16 percent here, on the amount of taxes, penalty interest, and costs paid at the tax sale. Section 39–12–103(3), C.R.S. (1994 Repl.Vol. 16B). While redemption interest (along with all other costs of redemption) is paid to the county, it is only held by the county "subject to the order of the purchaser." Section 39–12–103(3). That is, when there is a third-party buyer at the tax sale, redemption interest accrues to the third party, not to the county. *See Statton v. People,* 18 Colo.App. 85, 70 P. 157 (1902).

■■■ Redemption interest charged on the erroneously levied taxes, contrary to plaintiffs' contention, is not refundable.

The right of redemption is "a statutory right exclusively, and can only be claimed in the cases and under the circumstances prescribed ... and then only under such conditions as the statute may allow." *See Keely v. Sanders,* 99 U.S. 441, 446, 25 L.Ed. 327, 328 (1879). *See also Skidmore v. O'Rourke,* 152 Colo. 470, 383 P.2d 473 (1963) (tax lien is a creature of statute and a county treasurer has no authority except that expressly delegated by statute).

■■■ It is for this court to enforce the statutes as written. If this does not correspond to the General Assembly's intent, it is for that body, not this court, to rewrite it. *Scholz v. Metropolitan Pathologists, P.C.,*

851 P.2d 901 (Colo.1993); *Skidmore v. O'Rourke, supra.*

Section 39–10–114(1)(b) makes no mention of redemption interest. And, as applicable here, § 39–12–103(3) permits redemption only by the redeemer paying:

> the amount of taxes, delinquent [penalty] interest, and costs for which the tax lien on the property was sold, with redemption interest thereon from the date of sale at the rate [of 15—16 percent].

Plaintiffs do not suggest, and we do not independently discern, any statutory basis for a refund of any of the redemption interest taxpayers are required to pay under this provision.

Nor do we assume that the omission of a provision for refund of redemption interest was inadvertent. To the contrary, other relevant provisions of the property tax statutes indicate that the General Assembly did not simply overlook the possibility of a tax lien sale of erroneously assessed property.

Specifically, § 39–12–111(1) addresses this situation, but does not provide for any refund to the redeemer. Instead, it provides only for reimbursement of the tax lien purchase price to the third-party buyer, essentially cancelling the certificate of purchase. Moreover, such relief is provided only when a tax lien has been "sold on land upon which *no tax was due* at the time." Section 39–12–111(1), C.R.S. (1994 Repl.Vol. 16B) (emphasis added); *see also Elder v. Board of County Commissioners,* 33 Colo. 475, 81 P. 244 (1905).

## II.

Plaintiffs next contend that, to the extent that the statutes do not provide for a refund or credit of all penalty and redemption interest paid on erroneously levied taxes, the statute worked a *per se* taking of their private property interests in the tax abatement or tax adjustment awards without due process and just compensation. Because we hold that the penalty interest paid on any erroneously assessed taxes must be refunded, their claim is moot as to penalty interest. As to redemption interest, we disagree.

## A.

■ We agree with plaintiffs that property tax abatements and adjustments, which, as here, have gone to appeal, are judgments. *See* §§ 39–8–109 and 39–5–122(3), C.R.S. (1994 Repl.Vol. 16B). They are, therefore, property interests that cannot be taken without due process or just compensation. *See Kirk v. Denver Publishing Co.*, 818 P.2d 262, 268 (Colo.1991) (a final judgment is a property interest which "cannot be diminished by legislative fiat"). We will also assume, as plaintiffs assert, that, to the extent that redemption interest is charged on the abated/adjusted tax amount, it is a governmental appropriation of the award. We will consider this to be true regardless whether the redemption interest accrues to a third party or to the county since the county benefits from payment to either party.

## B.

■ We disagree, however, with plaintiffs' contention that such collection of redemption interest on the erroneously assessed value is not rationally related to a legitimate government interest.

■ In the absence of deprivation of a fundamental right, the applicable test for reviewing a substantive due process challenge to a statute is the rational basis standard of review. *Ferguson v. People*, 824 P.2d 803 (Colo.1992); *see also Kirk v. Denver Publishing Co., supra*, 818 P.2d at 270 (governmental appropriation of part of a money judgment can withstand a constitutional challenge only if the appropriation bears a "reasonable relationship to the governmental services provided [which resulted] in the judgment.").

■ Under this test, there is a presumption of constitutionality to the statute, and the burden is on the party challenging the statute to establish beyond reasonable doubt that the statutory provision lacks a rational relationship to a legitimate governmental interest. *Burtkin Associates v. Tipton*, 845 P.2d 525 (Colo.1993).

The high interest rate charged for redemption from a tax lien sale discourages taxpayers from allowing properties to go to tax lien sale, encourages third party lien buyers to bid at the tax lien sales, and encourages property owners to redeem from the county if no third-party buyer comes forward to provide the county with revenue. All three functions provide the county with a regular receipt of public revenue, which is recognized as an important and legitimate government interest. *Van Dorn Retail Management, Inc. v. Denver*, 902 P.2d 383 (Colo.App.1994). By whom, when, and through what procedure this revenue is collected is a matter for legislative determination, subject to the rule that the procedure cannot be "utterly unreasonable or arbitrary." *Liebhardt v. Department of Revenue*, 123 Colo. 369, 374, 229 P.2d 655, 658 (1951).

Here, the statutory scheme requires the county to conduct a tax lien sale on properties deemed to have delinquent taxes. *See* § 39–11–101, et seq. Importantly, however, the statute also attempts to limit improper sales as well as to provide remedies for egregious mistakes in conducting sales. For example, the statute provides that a sale should not be held if the treasurer can ascertain beforehand that the properties have been erroneously assessed. *See* § 39–11–107, C.R.S. (1994 Repl.Vol. 16B). The statute also addresses the consequences of conducting a sale when the property owner is incorrectly listed on the tax rolls, § 39–11–112(1), when the land is erroneously listed for sale in a particular county, § 39–11–112(2), C.R.S. (1994 Repl.Vol. 16B), and when a tax lien is sold on land upon which no tax is due. Section 39–12–111(1). While the statute does not protect all taxpayers from every error by the county, we cannot say that the statute is "utterly unreasonable."

Furthermore, the supreme court has recognized that the ability of a party to escape from application of a statutory provision on tax collection "weakens, and all but forecloses," a claim that the provision violates the due process clause. *Burtkin Associates v. Tipton, supra*, 845 P.2d at 529 (creating lien on property of lessor for lessee's delinquent tax not unconstitutional where lessor can have property exempted by following statutory procedure). Here, plaintiffs could have avoided all redemption interest by pursuing

the protest or abatement provisions after paying the assessed tax, or by redeeming the property immediately after the tax lien sale.

Moreover, the county assessor conveys notice of any changes in valuation of property to taxpayers approximately 18 months prior to the tax lien sales. *See* § 39–5–122(1), C.R.S. (1994 Repl.Vol. 16B). An owner/taxpayer could then file an immediate protest, pursuant to § 39–5–122(2), C.R.S. (1994 Repl. Vol. 16B), to at least try to avoid a tax lien sale and the resulting redemption interest, which here, only Havana Street, Ltd. apparently attempted to do.

### III.

Plaintiffs also contend that the county was unjustly enriched by retention of penalty interest and redemption interest, and by temporary use of the erroneously assessed taxes and penalty interest thereon. As discussed, this question is moot as to retention of penalty interest since we hold that it must be refunded to plaintiffs. As to retention of redemption interest and temporary use of either interest, we disagree.

■ To prevail on a unjust enrichment claim, plaintiffs must show that they conferred a benefit on the county, that the benefit was appreciated by the county, and that the benefit was accepted under circumstances that it would be inequitable for the county to retain the benefit without paying for it. *Ninth District Production Credit Ass'n v. Ed Duggan, Inc.,* 821 P.2d 788 (Colo. 1991). If plaintiff does not convey the benefit, plaintiff cannot claim unjust enrichment. *See Spencer Investments Inc. v. Bohn,* 923 P.2d 140 (Colo. App.1995).

■ Further, a taxing entity may rely on any defense in equity to demonstrate that the claim does not merit recovery. *G. Heileman Brewing Co. v. La Crosse,* 105 Wis.2d 152, 312 N.W.2d 875 (Ct.App.1981). A trial court's assessment of the equities will not be disturbed on appeal if it is supported by evidence in the record. *McFadzean v. Lohr,* 152 Colo. 31, 380 P.2d 20 (1963).

### A.

Specifically, plaintiffs contend that the county's temporary use of the erroneously assessed taxes and penalty interest from the date of the tax lien sale until the date of redemption results in unjust enrichment if, as we have held, refund interest is calculated only from the date of redemption rather than from the date of the tax lien sale.

■ Here, up until the time of redemption, plaintiffs had provided no financial benefit to the county. Until that time, only the lien buyers' money was available to the county. Consequently, the county was not enriched by temporary use of plaintiffs' money. Hence, as a matter of law, even if the tax lien was based on an erroneous assessment of plaintiffs' properties, plaintiffs have no claim for unjust enrichment by virtue of the county's temporary use of the lien buyers' money.

### B.

■ Plaintiffs claim, nevertheless, that the county was unjustly enriched by retention of redemption interest on the erroneously assessed taxes and penalty interest. They argue that equity demands a refund because the errors in property valuations which resulted in the collection of excess tax were solely the fault of the county and that plaintiffs were forced into the lien sale because they were unable to pay the excessive taxes. Thus, they assert that, regardless whether the county's actions were in compliance with the statutes, the county accepted and retained a benefit from plaintiffs under circumstances which would make it inequitable for them to do so. We disagree.

■ Compliance with a statutory scheme does not necessarily preclude a claim of unjust enrichment. *See Ninth District Production Credit Ass'n v. Ed Duggan, Inc., supra* (priority of secured creditor under UCC may be defeated by unjust enrichment); *Frank M. Hall & Co. v. Southwest Properties Venture,* 747 P.2d 688 (Colo.App.1987) (recovery on unjust enrichment theory possible despite defendant's compliance with statutory requirements to avoid mechanic's lien).

Such a claim in equity depends, however, on the circumstances under which the benefit is accepted. When, as here, a statutory scheme provides the parties with predictability for transactions and with notice of the consequences of their actions, a plaintiff must show more than simple involvement of the benefited party in the enriching transaction. Instead, the enriched party must have encouraged or initiated the transaction, not simply passively benefited from it. *See Ninth District Production Credit Ass'n v. Ed Duggan, Inc., supra; Frank M. Hall & Co. v. Southwest Properties Venture, supra.*

Here, except under very limited circumstances, the county is statutorily required to sell the tax liens. *See* §§ 39–11–101 and 39–11–107. And, although the county may have benefitted financially from its erroneous assessment of plaintiffs' properties, there is no question here of bad faith on the part of the county in its excessive valuation of the properties.

Furthermore, the county is not typically the principal beneficiary of redemption interest. Indeed, when the tax lien is purchased by a third party, redemption interest accrues to the buyer, not to the county. *See* §§ 39–12–103 and 39–11–115(1). In that situation, the county benefits only to the extent that the availability of redemption interest fosters third-party bidding at tax lien sales. In fact, since the minimum bid is dependent on the taxes due, it is likely that an over-assessment could actually discourage third-party bidders, negating the county's principal benefit from redemption interest.

Accordingly, we find record support for the trial court's determination that the circumstances of enrichment do not require that the county refund or credit redemption interest.

The judgment is reversed as to the ruling that the county was not obligated to reimburse plaintiffs for penalty interest paid on erroneously levied taxes. In all other respects, the judgment is affirmed.

CASEBOLT and ROY, JJ., concur.