DOVE VALLEY BUSINESS PARK ASSO-
CIATES, LTD., a Colorado limited part-
nership; Abacus Group Realty Holding
Company II, a Delaware corporation, as
successor by merger to Diversified Land
Holdings, Inc., a Delaware corporation;
Havana Street, Ltd., a Colorado limited
partnership; Gullwing Acres Limited
Liability Co., a Wyoming limited liabili-
ty company; and Colorado National
Bank, a federally chartered bank, as
successor by merger to Bank Western,
federal savings bank, Petitioners,

v.

The BOARD OF COUNTY COMMISSION-
ERS OF ARAPAHOE COUNTY, COLO-
RADO; and Adrian B. "Bernie" Ciazza,
Treasurer, Arapahoe County, Colorado,
Respondents.

No. 96SC101.

Supreme Court of Colorado,
En Banc.

Sept. 15, 1997.

As Modified on Denial of Rehearing
Oct. 20, 1997.

The Law Offices of Bennett S. Aisenberg, P.C., Bennett S. Aisenberg, H. Paul Himes, Jr., Barry J. Goldstein, Denver, for Petitioners.

Kathryn L. Schroeder, County Attorney, Arapahoe County, Richard F. Mutzebaugh, Assistant County Attorney, for Respondents.

Wilcox & Ogden, P.C., Ralph Ogden, Denver, for Amici Curiae, The Colorado Union of Taxpayers and The Colorado Trial Lawyers Association.

Justice BENDER delivered the Opinion of the Court.

In this property tax case, the respondents, the Arapahoe County Board of Commissioners (the county) and the Treasurer of Arapahoe County (the treasurer), refused to return the redemption interest paid by the petitioners (the taxpayers) on that portion of the taxpayers' real property taxes which was determined to be excessive and was refunded as a result of later protest and abatement proceedings. The taxpayers sued, claiming that the county and the treasurer violated the takings clauses of the United States and Colorado Constitutions and were unjustly enriched. The district court dismissed the taxpayers' complaint for failure to state a claim upon which relief can be granted. The court of appeals affirmed in *Dove Valley Business Park Associates v. Board of County Commissioners*, 923 P.2d 242 (Colo.App.1995), holding that any taking that occurred was constitutionally permissible and that the county had not been unjustly enriched. The taxpayers petitioned this court for certiorari review of the decision of the court of appeals.[1]

---

1. The issues were framed on certiorari as follows:

Did the Court of Appeals err in determining that the County's assessment against the tax-

We hold that redemption interest is a statutorily imposed penalty, an additional charge, which must be calculated based on the amount of taxes paid by the purchaser of a tax lien rather than on the amount of taxes determined to have been actually owed at a later protest or abatement proceeding. § 39-12-103, 11 C.R.S. (1997). Redemption interest is a penalty exacted from the taxpayer for the privilege of redemption because the taxpayer failed to pay property taxes before the property was sold at a tax lien sale. *Id.* Because the taxpayer has no reasonable expectation based on state law of being exempt from this penalty, we hold that no taking occurs when the county charges redemption interest as required by statute. We further hold that the county was not unjustly enriched by the taxpayers' payment of this penalty because the taxpayers conveyed no benefit to the county. We affirm the court of appeals, but differ in our reasoning.

## I.

The taxpayers each own parcels of commercial real property located in Arapahoe County.[2] For the tax years 1989, 1990, and/or 1991, the Arapahoe County Assessor overvalued these parcels by as much as 48% above their actual value. The taxpayers failed to pay their taxes for the years in which their properties were overvalued, and the treasurer conducted a tax sale at which third party bidders purchased tax liens on some of these properties. Properties of the taxpayers on which no bids were submitted at the sale were removed from the county tax rolls.

The taxpayers then redeemed much of their property by paying the amount of the erroneous tax assessment, delinquent interest[3] on the erroneous assessment, redemp-

tion interest on the erroneous assessment, and the costs of the sale. Delinquent interest is interest that accrues when the taxpayer fails to pay property taxes by the statutory due date. § 39-10-104.5, 11 C.R.S. (1997).

One of the taxpayers, Havana Street, Ltd., filed a protest upon receiving the notice of valuation from the assessor. The other taxpayers waited until after the tax lien sale and then petitioned for abatement and refund. The protest and the petitions for abatement were denied by the assessor and the assessor's denial was affirmed on appeal to the Arapahoe County Board of Equalization (BOE). Further appeal to the State Board of Assessment Appeals (BAA) resulted in a substantial lowering of the assessed values of all the taxpayers' properties and an order to the treasurer to abate the taxes.

The county refunded the erroneously levied taxes, but refused to pay any refund interest for having held the taxpayers' money in error. Refund interest is interest paid to the taxpayer on the amount of the refunded payment. § 39-10-114(1)(b), 11 C.R.S. (1997). In addition, the county refused to return to the taxpayers the delinquent interest and the redemption interest that the taxpayers paid on the portion of the tax assessment determined to be excessive. The taxpayers sued the county and the treasurer, arguing that the county's refusal to pay these amounts constituted a violation of the statutory scheme, an unconstitutional taking, and unjust enrichment.

The taxpayers moved for summary judgment, and the county and the treasurer responded by moving to dismiss for failure to state a claim upon which relief can be granted. After a hearing, the district court issued a declaratory judgment that the taxpayers

payer of redemption interest on erroneously assessed taxes is a constitutionally permissible taking of petitioners' property?
Did the Court of Appeals err in determining that petitioners' equitable claim of unjust enrichment must fail because the county assertedly did not receive a benefit from the taxpayer, did not encourage or initiate the transaction which it benefited from, and is not typically the principal beneficiary of redemption interest?

2. This case originally consisted of four individual cases which were consolidated by the district court because they involved identical questions of law.

3. Delinquent interest is also known as "penalty interest." We use the term "delinquent interest" because of the legislature's preference for this phrase. See ch. 320, sec. 1-25, §§ 39-1-107 to 39-12-103, 1992 Colo. Sess. Laws 2222, 2222-34 (replacing the term "penalty interest" with the term "delinquent interest" throughout Title 39).

were not statutorily entitled to refund interest, nor were they entitled to a reimbursement of the delinquent interest and the redemption interest paid on the abated portion of the taxes. The district court held that the statutory scheme was neither unconstitutional nor inequitable, and that the taxpayers failed to present any evidence in support of their claims. The district court dismissed the taxpayers' claims for failure to state a claim.

The taxpayers appealed. The court of appeals agreed with the taxpayers that the county was required to pay refund interest[4] and to reimburse the taxpayers for delinquent interest paid on the abated portion of the taxes. *See Dove Valley*, 923 P.2d at 245, 248. However, the court of appeals agreed with the district court that the county was not required by statute to reimburse the taxpayers for redemption interest paid on the abated portion of the taxes. *See id.*

Having determined that the county was statutorily entitled to retain the redemption interest paid on the erroneously levied taxes, the court of appeals turned to the question of whether this statutory procedure constituted an unconstitutional taking. *See id.* The court stated that the abatement award was a judgment, and therefore a property interest which cannot be taken by the government without following due process of law requirements or payment of just compensation. *See id.* at 249. The court assumed for purposes of its analysis that the charging of redemption interest on the erroneously assessed taxes diminishes the effect of the judgment and therefore constitutes a governmental appropriation of the award. *See id.* The court of appeals reasoned, however, that this taking was permissible because it was rationally related to the important and legitimate governmental interest in the regular receipt of public revenue. *See id.*

The court of appeals also held that the county had not been unjustly enriched by retaining the redemption interest paid by the taxpayers on the erroneous assessment. *See*

*id.* at 250. The court of appeals noted that when a third party purchases the tax lien, the county receives no benefit because redemption interest accrues to the buyer rather than to the county. *See id.* at 251. The court of appeals acknowledged that the taxpayer does pay redemption interest to the county when no investor can be found to purchase the tax lien. *See id.* The court reasoned that any benefit to the county under these circumstances was not inequitable because the county did not act in bad faith. *See id.*

The court of appeals remanded with instructions for the district court to order the county to pay refund interest and to reimburse the taxpayers for the delinquent interest paid on the erroneously levied taxes. *See id.* The taxpayers petitioned this court for certiorari review on the issue of whether the county effected an unconstitutional taking or was unjustly enriched by refusing to reimburse the taxpayers for redemption interest paid on the erroneously levied taxes. We affirm the holding of the court of appeals that the county's refusal to return a portion of the redemption interest in this case was constitutional and did not constitute unjust enrichment, but we employ different reasoning.

## II.

Each year, the assessor for each county values the real property within the county for tax purposes and notifies property owners of the valuation of their property. *See generally* § 39–1–103(5)(a), 11 C.R.S. (1997). Property owners who believe that their land has been overvalued may file an immediate protest with the assessor, who conducts a hearing and issues a decision. *See* §§ 39–5–121 to –122, 11 C.R.S. (1997). The statutory scheme provides for subsequent review by the BOE, *see* § 39–8–106, 11 C.R.S. (1997), by the BAA, *see* § 39–8–108, 11 C.R.S. (1997), and by state appellate courts, *see id.* If the taxpayer prevails, the treasurer re-

---

4. The court of appeals held that refund interest must be calculated from the date that the taxes became delinquent to the date of the tax sale because delinquent interest ceases to accrue

upon the sale of the tax lien. The court rejected the taxpayers' argument that refund interest should be calculated from the date that the taxes became delinquent to the date of redemption.

duces the tax to reflect the proper assessment.

Although statutory deadlines ensure that this procedure occurs as expediently as possible, the legislative scheme contemplates that in some cases the tax will become due before the resolution of the protest. *See* § 39–8–109, 11 C.R.S. (1997); *Gates Rubber Co. v. State Bd. of Equalization,* 770 P.2d 1189, 1193 (Colo.1989); *Board of Assessment Appeals v. Benbrook,* 735 P.2d 860, 865 (Colo. 1987). Should taxes become due before the completion of the protest procedure, the taxpayer must pay the amount of the assessment, and if the protest is successful, the treasurer refunds the overpayment of taxes and any delinquent interest paid on the amount of the overassessment, together with refund interest at one percent per month. *See* § 39–8–109 (stating that the taxpayer will receive a refund if a protest is successful); § 39–10–114(1)(a)(I)(A), 11 C.R.S. (1997) (providing for a refund of taxes levied erroneously or illegally and delinquent interest thereon); *Gates Rubber Co.,* 770 P.2d at 1193; *Benbrook,* 735 P.2d at 865.

Protest is not the only remedy available to a property owner whose property is overvalued by the assessor. The property owner may elect to pay the taxes by the due date and then petition the board of county commissioners for an abatement and refund. *See* § 39–1–113, 11 C.R.S. (1997). The board of county commissioners conducts a hearing on the petition and makes a recommendation to the state tax administrator, whose decision may be appealed by the taxpayer to the BAA. *See* § 39–2–125(1)(b), 11 (1997). The taxpayer, if successful, receives a refund of the overpayment of taxes and any delinquent interest paid on the amount of the overassessment, together with refund interest at one percent per month. See C.R.S. § 39–8–109 (1997).

Neither the protest procedure nor the abatement procedure suspends the deadline for the payment of property taxes. Taxpayers must pay their property taxes by the due date regardless of the fact that a protest may be pending or that the taxpayer may intend to file a petition for abatement. *See* § 39–10–104.5(3)(b), 11 C.R.S. (1997). Failure to pay taxes in a timely manner results in the accrual of delinquent interest in the amount of one percent per month. *See id.* In addition, a tax lien attaches against the property for the amount of taxes levied against the property together with any delinquent interest, costs, and fees. *See* § 39–1–107, 11 C.R.S. (1997).

The county treasurer is required to hold a public auction for the purpose of selling these tax liens to third party investors. *See* § 39–11–101, 11B C.R.S. (1997). To purchase a tax lien, the investor must pay the taxes levied against the property, the accrued delinquent interest, and the costs of the sale. *See* § 39–11–115, 11 C.R.S. (1997). In exchange, the purchaser acquires a certificate of purchase which operates as a lien against the property. Three years from the date of the tax lien sale, the tax certificate holder, upon paying all subsequent taxes due on the property, is entitled to receive a deed to the property from the treasurer. *See* § 39–11–120, 11 C.R.S. (1997).

If a property generates no bids at the tax lien sale, then the treasurer must strike off the tax liens on those properties for the amount of taxes, delinquent interest, and costs, and remove this property from the county tax rolls. *See* § 39–11–108, 11 C.R.S. (1997). The treasurer issues a certificate of purchase to the county, *see id.,* which becomes the owner of the lien. Although the county is not required to undergo "the useless form of paying the price with one hand and receiving it with the other," the legal effect of the treasurer striking off land to the county is that of a sale. *See* 72 Am.Jur.2d *State and Local Taxation* § 956 (1974). The county is considered a "purchaser" who has paid the taxes levied against the property, the accrued delinquent interest, and the costs of the sale. *See* § 39–11–142, 11 C.R.S. (1997); *Tarabino Real Estate Co. v. Dunlavy,* 105 Colo. 523, 525–26, 99 P.2d 926, 927–28 (1940). Subsequent taxes levied against parcels held by the county in this manner do not become payable unless the county sells the tax lien or the property is redeemed by the owner. *See* § 39–11–108. Like any other purchaser, the board of county commissioners may apply for and receive a deed to the

property three years after the sale. *See* § 39–11–142.

Any time before the tax lien sale the taxpayer may recover his property by paying the amount of tax assessed together with delinquent interest. After the tax lien sale, the taxpayer may redeem by paying the amount of taxes, delinquent interest, and costs paid by the purchaser of the tax lien with redemption interest[5] on this amount. If the certificate holder paid taxes on the property after the sale, then the taxpayer also must pay the taxes paid plus redemption interest in order to redeem. *See* § 39–12–103(3), 11 C.R.S. (1997). All monies received by the treasurer for the redemption of land is delivered to the holder of the tax lien certificate. *See* § 39–12–108, 11 C.R.S. (1997). It is the duty of the treasurer to exact payment from the taxpayer for the purchaser's entire purchase money, plus statutory interest, charges, and penalties, and to deliver this money to the purchaser. *See id.; see also* § 39–12–103(3), 11 C.R.S. (1997); § 39–11–130, 11 C.R.S. (1997); *Statton v. People ex rel. Burr,* 18 Colo.App. 85, 91–92, 70 P. 157, 159 (1902). After the treasurer issues a deed to the purchaser, the taxpayer no longer has a property interest in the real estate and may no longer redeem.

The purpose underlying this scheme is to ensure that the county has a consistent source of revenue. *See Liebhardt v. Department of Revenue,* 123 Colo. 369, 374, 229 P.2d 655, 658 (1951) (stating that the prompt payment of taxes is "imperatively necessary" and that "delay cannot be tolerated"). If the county cannot compel the taxpayer to pay property taxes on the parcel, then the county must find someone who will or else strike the property from the county tax rolls and suffer a loss of revenue. Ideally, the taxpayer pays his taxes before the tax lien sale so that the county avoids the possibility that the property will generate no bids, resulting in a loss of revenue. However, should the property go to tax lien sale, it is imperative that the county find an investor to purchase the lien.

Redemption interest furthers the goal of providing a consistent source of income by discouraging taxpayers from allowing their properties to go to a tax lien sale and by encouraging third party bidding as purchasers of the tax liens. Redemption interest is a penalty which the taxpayer must pay in order to recover property after the taxpayer allows the property to go to a tax lien sale. *See* Herbert Thorndike Tiffany, *The Law of Real Property* § 1248, at 1153 (3d ed. 1975)("The owner of the land . . . is ordinarily required to pay a penalty, calculated in interest at a high rate."); 85 C.J.S. *Taxation* § 874(b)(1954) (stating that statutory penalties for redemption must be paid and shall be strictly construed); *see generally Black's Law Dictionary* 1133 (6th ed.1990) (defining penalty as "a sum of money which the law exacts payment of by way of punishment for doing some act which is prohibited or for not doing some act which is required to be done"). In addition, redemption interest encourages investors to purchase tax liens because of the promise of a high rate of return on the amount of taxes they paid at the sale. Finally, if no bidders come forward at the sale and the county becomes the purchaser by default, redemption interest provides the county with compensation for the burden of operating without the revenue that should have been generated by taxes on that property.

■ The policy underlying the right of redemption is the "general policy of the law that no man shall forfeit his estate because of his inability to meet engagements on the day prescribed by law for their payment." 72 Am.Jur.2d *State and Local Taxation* § 988 (1974). Because the law favors redemption, redemption statutes are construed liberally to afford property owners ample opportunity to redeem. *See Notch Mountain Corp. v. Elliott,* 898 P.2d 550, 555 (Colo.1995).

■ In Colorado, delinquent taxpayers have no constitutional right to redemption. Instead, redemption is a statutory privilege created by the General Assembly which may be exercised only as provided by statute.

---

**5.** Redemption interest is nine percentage points above the discount rate, which in this case was approximately 15–16%. *See* § 39–12–103(3).

*See id.* Consequently, despite the policy in favor of redemption, redemption is "a gratuity which, if granted, may be restricted" as the legislature deems appropriate. *See* 72 Am.Jur.2d *State and Local Taxation* § 994 (1974). Redemption interest, then, is a statutorily determined penalty exacted from the taxpayer for the privilege of redemption. *See Weston Inv. Co. v. State,* 31 Cal.2d 390, 189 P.2d 262, 264 (1948) (stating that redemption is a privilege and that "[r]edemption penalties are imposed as a condition of being relieved from the consequences of the sale"); *Skach v. Sykora,* 6 Ill.2d 215, 127 N.E.2d 453, 457 (1955); 85 C.J.S. *Taxation* § 874 (1954) (stating that redemption statutes often provide for the payment of a heavy premium, calculated at an extraordinary rate, which serves as a penalty against the property owner).

### III. Takings Clauses Claims

■ The taxpayers argue that the collection of redemption interest on an erroneous assessment amounted to an unconstitutional taking. We disagree.

The Fifth Amendment to the United States Constitution and Article II, sections 15 and 25 of the Colorado Constitution prohibit the government from depriving a person of life, liberty, or property, without due process of law, and from taking any person's property for public use without just compensation. Property interests " 'are defined by existing rules or understandings that stem from an independent source such as state law.' " *Webb's Fabulous Pharmacies, Inc. v. Beckwith,* 449 U.S. 155, 161, 101 S.Ct. 446, 451, 66 L.Ed.2d 358 (1980) (quoting *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)).

■ The state law on redemption interest is clear because the plain language of section 39–12–103(3) explicitly warns a taxpayer that redemption interest will accrue based on the amount of taxes *paid by the purchaser. See* § 39–12–103(3). The county charged the taxpayers redemption interest in the amount provided precisely by the General Assembly in section 39–12–103(3). This statutory scheme did not provide the taxpayers with

any basis to conclude that if they failed to pay their property taxes in a timely manner, and later redeemed their property, that the redemption interest on the amount paid by the purchaser would not apply to them. Hence, the taxpayers had no reasonable expectation that they would be held accountable for a sum less than what was mandated by statute. As landowners, the taxpayers are charged with knowledge of the tax laws and are presumed to know that their actions, such as failure to pay property taxes, will lead to an encumbrance. *See Burtkin Assocs. v. Tipton,* 845 P.2d 525, 528 (Colo.1993).

■ The taxpayers analogize this case to *Kirk v. Denver Publishing Co.,* 818 P.2d 262, 273 (Colo.1991), in which we held that the government appropriation of a portion of a money judgment constitutes a taking. In *Kirk,* we found that a statute which required successful plaintiffs to pay one-third of all exemplary damages collected into a state general fund constituted an unconstitutional taking. The taxpayers argue that, likewise, the county's assessment of a redemption penalty reduced the taxpayers' refund interest award. We are not persuaded. The *Kirk* decision turned on the fact that the statute at issue in that case could not be characterized as a penalty. *See id.* at 270. By contrast, the redemption interest at issue in this case is a penalty. When the government exacts a penalty, it may deduct this penalty from a money judgment without effecting a taking. *See id.* (a penalty on a money judgment is not a taking); *see also Webb's Fabulous Pharmacies,* 449 U.S. at 162, 101 S.Ct. at 451 (a legitimate fee for services charged on a money judgment is not a taking). Because the taxpayers had no reasonable expectation that they were exempt from this penalty, the redemption interest charged by the county implicates no property interest and there is no violation of the takings clauses.

■ The taxpayers urge that their situation is governed by the due process principles articulated in *Harper v. Virginia Department of Taxation,* 509 U.S. 86, 101, 113 S.Ct. 2510, 2519–20, 125 L.Ed.2d 74 (1993), which held that a taxation scheme which denied the taxpayer a predeprivation oppor-

tunity to contest the validity of the tax assessment must provide meaningful backward-looking relief, such as a "full refund." The taxpayers assert, and we agree, that Colorado's scheme does not guarantee predeprivation relief. We also agree that due process requires meaningful backward-looking relief such as a "full refund." Colorado's property taxation scheme does provide for a full refund with interest for incorrectly or erroneously collected taxes, as the court of appeals held in this case. The taxpayers argue, however, that a portion of the redemption "interest," that is, the amount calculated on the abated tax, should be included as their "full refund" under *Harper.*

This argument misconceives the nature of redemption interest. Redemption "interest" is a misnomer because it does not represent funds accrued from money retained for the benefit of the taxpayers; this purpose is served by refund interest. *See Webb's Fabulous Pharmacies,* 449 U.S. at 161, 101 S.Ct. at 451 (holding that interest from a fund held by the state government for the benefit of other third parties must be distributed among those entitled to the principal and must not be retained by the government); *Black's Law Dictionary* 812 (6th ed.1990) (defining interest). The taxpayers are entitled to refund interest because they are entitled to the return of the overassessed taxes (the principal) plus a reasonable rate of interest. By contrast, redemption interest is a penalty, the calculation of which is statutorily prescribed. The fact that redemption interest is termed "interest" and is calculated by percentages does not alter its punitive purpose. Unlike a refund, the taxpayers are not entitled to reimbursement for the statutory penalty assessed because they failed to pay taxes in a timely manner. Because the taxpayers have received their "full refund"— their principal (the overassessed tax) plus interest—the *Harper* requirements of due process are met but do not extend to the refunding of redemption interest.

The taxpayers further argue that the calculation of redemption interest on the erroneously assessed taxes diminishes the effect of the judgment they obtained abating their taxes and as such constitutes a governmental appropriation of the award. We are unpersuaded. The county was required to hold the tax lien sales because of the taxpayers' decision not to pay the taxes when due. Thus, it was the conduct of the taxpayers which diminished the effect of the abatement award rather than any act by the government. Had the taxpayers timely paid their taxes they would have received the full amount of their abated award with interest. The county's actions in this case represented a valid exercise of the sovereign power to assess and collect taxes, which is separate and distinct from the power to take private property for a public use. *See Burtkin Assocs.,* 845 P.2d at 529. The purpose of a tax lien sale is not to acquire property, but to "coerce negligent and unwilling citizens to pay their taxes." 85 C.J.S. *Taxation* § 744 (1954).

We find support for our reasoning in *Burtkin,* where the owner of real property claimed takings clauses violations when the state seized his property because the lessee failed to pay taxes as provided by the lease. We rejected the owner's argument in part because the owner failed to protect its property interests by using available statutory provisions which would have unconditionally exempted the property from tax liens. We upheld the seizure because the seizure was the result of the owner allowing its property rights to lapse and not the result of action by the state. *See id.* Similarly, the taxpayers in this case could have avoided the imposition of the penalty of accrual of redemption interest by paying their taxes before the tax lien sale.

■ The taxpayers argue that the option of paying the taxes is a practical impossibility, especially where, as here, the overassessment is substantial.[6] We acknowledge the taxpayers' argument that this statutory scheme will sometimes produce a harsh result. This is so because tension exists between the government's need to generate revenue and the property owner's rights to

---

**6.** Dove Valley's abatement, for example, was in the amount of $189,394.43. The taxpayers argue that they were forced into the tax lien sale because they could not afford to pay the amount of the overassessment.

his property. *See generally* Randall Thomsen, *Washington State Property Tax Foreclosures*, 32 Gonz. L.Rev. 123, 126 (1996–97). With respect to provisions for redemption, our General Assembly resolved these conflicting interests in favor of the county. Absent constitutional infringement, it is not our province to rewrite the statutes. *See Nelson v. City of New York*, 352 U.S. 103, 111, 77 S.Ct. 195, 199, 1 L.Ed.2d 171 (1956) (stating that "relief from the hardship imposed by a state statute is the responsibility of the state legislature and not of the courts").

## IV. Unjust Enrichment Claim

■ The taxpayers further contend that the county was unjustly enriched by its collection of redemption interest based on the amount of the erroneously assessed taxes rather than the lower tax later determined to be correct. We disagree.

■ Unjust enrichment, also known as a quasi-contract, or a contract implied in law, is an equitable principle which allows courts to avoid the unjust enrichment of one party at the expense of another by creating bargains where the parties have not done so. *See Moore & Co. v. T–A–L–L, Inc.*, 792 P.2d 794, 801 (Colo.1990); Saul Levmore, *Explaining Restitution*, 71 Va. L.Rev. 65 (1985).

■ To recover restitution in a claim of unjust enrichment, a plaintiff must demonstrate "(1) that a benefit was conferred on the defendant by the plaintiff, (2) that the benefit was appreciated by the defendant, and (3) that the benefit was accepted by the defendant under such circumstances that it would be inequitable for it to be retained without payment." *Cablevision of Breckenridge, Inc. v. Tannhauser Condominium Ass'n*, 649 P.2d 1093, 1096–97 (Colo.1982).

■ A person confers a benefit by giving the adverse party the possession of, or an interest in, personal property by adding to the property of the adverse party or by saving the adverse party expense or loss. A benefit denotes any form of advantage. *See Ninth Dist. Prod. Credit Ass'n v. Ed Duggan, Inc.*, 821 P.2d 788, 801 (Colo.1991).

Applying these principles we conclude no benefit was conveyed to the county by the taxpayers who paid redemption interest based on the statutorily required amount. When tax liens on the taxpayers' properties were purchased by third parties and then redeemed by the taxpayers, the county paid the full redemption interest to the tax lien purchasers and not to the county. Thus, the county received no benefit. Taxpayers' properties on which there were no bidders resulted in the county becoming the default purchaser, and the taxpayers' redemption interest payments constituted compensation for the burden placed upon the county by the taxpayers when they failed to provide the county a regular source of property tax revenue from the time of the tax sale. Hence, the taxpayers' payment of redemption interest in this latter category conveyed no advantage or benefit to the county. Therefore, we reject the taxpayers' argument that the county was unjustly enriched by the payment of redemption interest calculated on the basis of an assessment determined to be excessive at a date after the county conducted the tax lien sale.

The court of appeals held that any benefit conveyed by the taxpayers to the county was not unjust because the county did not act in bad faith in making the erroneous assessment. We do not reach the question of the circumstances under which any benefit was conveyed because we conclude that the taxpayers did not convey a benefit to the county.

The taxpayers argue that the county had the use of the taxpayers' erroneously assessed tax dollars interest free. This is simply not the case. As held by the court of appeals, the taxpayers are entitled to receive refund interest for the county's receipt of the erroneously assessed tax dollars. Compensation provided by refund interest is distinct from redemption interest. Redemption is a privilege which comes at a cost. "[R]edemption is a matter of legislative grace, which the legislature may withhold, enlarge, abridge, or curtail." 85 C.J.S. *Taxation* § 841 (1954).

## V.

Summarizing, we hold that redemption interest is a statutorily imposed penalty, an additional charge, which must be calculated

based on the amount of taxes paid by the purchaser of a tax lien rather than the amount of taxes determined to have been actually owed at a later protest or abatement proceeding. Redemption interest is a penalty exacted from the taxpayer for the privilege of redemption when the taxpayer fails to pay property taxes before the property is sold at a tax lien sale. Because the taxpayers have no reasonable expectation based on state law of being exempt from this penalty, we hold that no takings clauses violations occur when the county charges redemption interest as required by statute. We further hold that the county was not unjustly enriched by the taxpayers' payment of this penalty because the taxpayers conveyed no benefit to the county. We affirm the court of appeals' dismissal of the taxpayers' claims.

SCOTT, J., does not participate.