Erwin BACHRACH, Plaintiff–Appellant,

v.

Roberta F. SALZMAN; Country Wide Home Loans, Inc., a New York corporation, and Terry Schall, the Public Trustee of Eagle County, Colorado, Defendants–Appellees.

No. 98CA1400.

Colorado Court of Appeals,
Div. A.

Jan. 7, 1999.

Rehearing Denied Feb. 4, 1999.

Certiorari Granted July 26, 1999.*

* Justice SCOTT does not participate.

The Law Offices of Steven M. Segall, Steven M. Segall, Andrew D. Haas, Lakewood, Colorado, for Plaintiff–Appellant.

Dunn, Abplanalp & Mauriello, P.C., Arthur A. Abplanalp, Jr., Vail, Colorado, for Defendant–Appellee Roberta F. Salzman.

No Appearance for Defendants–Appellees Country Wide Home Loans, Inc. and Terry Schall.

Opinion by Chief Judge HUME.

Plaintiff, Erwin Bachrach, appeals the judgment of the trial court denying his claims against defendant Roberta F. Salzman. Defendants Countrywide Home Loans, Inc., and Terry Schall, Public Trustee of Eagle County, were named as parties because of their positions as mortgage lender and holder of the deed of trust on the home which is the subject of this lawsuit. They did not participate at trial, nor do they appear on appeal. We reverse and remand with directions.

The facts, as found by the trial court, are as follows. Bachrach and Salzman met in 1986. Bachrach was a widower, and Salzman was divorced and collecting maintenance from her ex-husband. The parties entered into an intimate relationship which terminated approximately ten years later when the events occurred that led to this lawsuit.

In 1993, Salzman suggested that Bachrach sell his home and pool resources with her to build a home together. The home was to be Salzman's; Bachrach, who was an experienced draftsman and home designer, agreed to help with the planning of the construction and to live in the home with her when it was completed, sharing some of the expenses.

Bachrach proceeded to sell his home and obtained $100,000 from the sale. Salzman netted $200,000 from the sale of her home. The total cost of the lot purchase and home construction was estimated by Bachrach to be approximately $370,000. Therefore, Salzman provided $25,000 from her savings and obtained a $50,000 mortgage to cover the balance. Bachrach did not charge Salzman any fee for his planning services.

Construction was completed in 1995. Bachrach quitclaimed his interest in the property to Salzman, and she obtained permanent financing on the property.

Later in 1995, Salzman's ex-husband served her with papers indicating his desire to terminate her $1,800/month maintenance payments, based in part upon an allegation of

common-law marriage between her and Bachrach, and in part on their alleged joint homeownership. Bachrach wrote to Salzman's ex-husband, asserting that the home was entirely Salzman's, and that his contribution was based on his expectation of living there indefinitely without payment of rent. The ex-husband thereafter dropped his request to terminate maintenance.

The parties lived in the home together for nearly two years. However, their relationship later deteriorated, and Salzman eventually locked Bachrach out of the house.

Bachrach thereafter initiated this action, mainly basing his claims on equitable theories, and Salzman filed counterclaims.

The trial court determined that the parties should "live with the positions into which they placed themselves," and did not grant judgment in favor of either of the parties on their various claims. This appeal followed.

## I.

Bachrach first contends that the trial court erred in determining that he was not entitled to equitable relief. We agree.

■ We agree with Salzman's contention that the trial court's determination of the equities of a case should be affirmed if it is supported by any credible evidence. *See Federal Land Bank v. Colorado National Bank,* 786 P.2d 514 (Colo.App.1989). However, we determine that the trial court did not appropriately apply the doctrine of unjust enrichment to its findings, and therefore, we conclude its decision cannot stand.

## A.

The trial court relied upon *Baker v. Couch,* 74 Colo. 380, 221 P. 1089 (1923) in support of its conclusion that enforcement of an agreement for cohabitation or an attempt to disguise a marriage to protect a person's right to maintenance is precluded by public policy. However, in our view, the circumstances in *Couch* are distinguishable from those here.

In that case, the plaintiff brought suit under a contract theory to recover promissory notes he had signed over to defendant allegedly in return for the illicit, adulterous rela-

tions between the parties. Our supreme court held that conduct of a sexual nature could not lawfully constitute consideration for the transaction. The court went on to note:

> Where the contract or transaction in question is illegal, fraudulent, or immoral, and there is mutual misconduct of the parties with respect thereto, neither law nor equity will aid either to enforce, revoke, or rescind. To such disputes the courts will not listen, and the parties thereto they will leave in the exact position in which they have placed themselves.

*Baker v. Couch, supra,* 74 Colo. at 383, 221 P. at 1090. There, however, the court was not faced with a factual situation involving anything other than "illicit" consideration. However, other jurisdictions have been confronted with and have considered this issue.

In *Lawlis v. Thompson,* 137 Wis.2d 490, 405 N.W.2d 317 (1987), the Wisconsin Supreme Court considered whether a party participating in nonmarital cohabitation would be precluded by public policy from seeking restitution of cash transfers made to the other cohabitant. The court there distinguished other precedent on the subject by noting that, where an "illicit" or cohabitational relationship is incidental and not the consideration for the transaction at issue, the equitable theory of unjust enrichment would be available to a party.

Similarly, in *Collins v. Davis,* 68 N.C.App. 588, 315 S.E.2d 759 (1984), *aff'd per curiam,* 312 N.C. 324, 321 S.E.2d 892 (1984), the plaintiff sought to recover $10,000 for money and labor expended on real property titled only in the cohabitant's name. The court there held that, where the money given was not a gift, and the circumstances did not indicate that the money and labor were consideration for illicit sexual intercourse, recovery could be made in equity. *See generally* Stenger, *Cohabitants and Constructive Trusts – A Comparative Approach,* 27 J. Fam. Law 373 (1989); *see also* Smith, Annotation, *Property Rights Arising from Relationship of Couple Cohabiting without Marriage,* 3 A.L.R.4th 13 (1981).

■ We find these references persuasive and hold that, when a cohabiting party con-

fers a benefit on the other cohabitant, and the benefited party is unable to demonstrate that sexual relations are the sole consideration for such contribution, recovery is not barred by public policy, but may be allowed under equitable theories.

### B.

Turning to the facts of this case, we hold that a claim for unjust enrichment was established by Bachrach.

■ Unjust enrichment, also known as a quasi-contract, or a contract implied in law, is an equitable principle which allows courts to avoid the unjust enrichment of one party at the expense of another by creating bargains where the parties have not intended to do so. *Dove Valley Business Park Associates, Ltd. v. Board of County Commissioners,* 945 P.2d 395 (Colo.1997).

■ To recover restitution on a claim of unjust enrichment, a plaintiff must demonstrate that: (1) a benefit was conferred on the defendant by the plaintiff; (2) the benefit was appreciated by the defendant; and (3) the benefit was accepted by the defendant under such circumstances that it would be inequitable for it to be retained without payment. *Cablevision of Breckenridge, Inc. v. Tannhauser Condominium Ass'n,* 649 P.2d 1093 (Colo.1982).

■ A person confers a benefit upon another if he or she gives to the other possession of or some other interest in money or land and performs services beneficial to or at the request of the other. A person also confers a benefit where he or she saves the other from expense or loss. The word "benefit" denotes any form of advantage. See *Cablevision of Breckenridge, Inc. v. Tannhauser Condominium Ass'n, supra.*

■ Here, it is undisputed that a substantial benefit was conferred on Salzman by Bachrach. He contributed the $100,000 proceeds from the sale of his home towards the acquisition of the property and the construction of the home. He also performed drafting and planning services free of charge. Salzman certainly appreciated the benefit of a substantial amount of money that otherwise would not have been made available to her, as well as not having to pay for architectural services.

■ Salzman accepted this benefit from Bachrach on the understanding that he could live in the home and only share some expenses. The trial court did not find that the parties' intimate relationship was the sole reason for Bachrach's contributions to the home, and also specifically found that his contributions were not intended to be a gift.

Therefore, we conclude that Bachrach has demonstrated his entitlement to restitution of the value of the contributions he made to the property.

### C.

Bachrach further asserts that the equitable principles of equitable lien and/or constructive trust should be applied to force Salzman to convey an interest in the property to him. We do not agree.

■ A constructive trust generally may be imposed to prevent unjust enrichment if there has been a conveyance of an interest in real property in reliance on an oral promise by the grantee to reconvey the property, and the grantee was in a confidential relationship with the grantor at the time of the conveyance. *See Page v. Clark,* 197 Colo. 306, 592 P.2d 792 (1979). A promise or agreement by the grantee to reconvey, however, is an essential condition for the imposition of a constructive trust under these circumstances. *See Kenyon v. Poehlmann,* 718 P.2d 264 (Colo.App.1986).

Here, no such promise to reconvey was found by the trial court. Thus, we will not require the trial court to impose this equitable remedy on remand.

■ In addition, the right to an equitable lien has not been demonstrated here. Equitable liens arise only where there is evidence that the parties intended to charge a particular property or fund as security for an obligation. *Barocas v. Bohemia Import Co.,* 33 Colo.App. 263, 518 P.2d 850 (1974). No evidence was presented to the trial court to allow a finding that the parties intended to charge the property to secure repayment of

Bachrach's contribution. Therefore, no equitable lien may be imposed.

## II.

Bachrach also contends that the court erred in its failure to set aside the quitclaim deed by which he transferred his legal interest in the property to Salzman. We do not agree.

Bachrach asserts that there was a failure of consideration for the quitclaim deed in that he did not receive the $10 stated, nor any other "good and valuable consideration"; therefore, he argues that the deed should be rescinded and he should be given back his interest in the property.

However, the trial court found that Bachrach did intend that the home should belong to defendant; in return, he expected to live in it indefinitely without paying rent, thus constituting "good and valuable consideration." Therefore, neither the law nor equity supports rescission of the deed.

The judgment is reversed, and the cause is remanded to the trial court for determination of the amount due Bachrach for his contributions to the home. In making that determination, the trial court may also consider an offset for the reasonable rental value Bachrach actually received during the time he resided in the home.

Justice ERICKSON** and Judge STERNBERG*, concur.